STIMSON MILL CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 11548.

Circuit Court of Appeals, Ninth Circuit.

July 21, 1947.

Rehearing Denied Aug. 25, 1947.

Writ of Certiorari Denied Nov. 17, 1947.

See 68 S.Ct. 165.

270

Bert L. Klooster, of Chicago, Ill. (Chapman & Cutler, of Chicago, Ill., of counsel), for petitioner.

Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss and Carlton Fox, Special Assts. to Atty. Gen., for respondent.

Before STEPHENS, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

The question presented by this petition is whether § 713(e) (1) and § 722 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, §§ 713(e) (1), 722, in force in 1942, may both be used to determine the excess profits credit of a taxpayer for the year 1942, or whether the two sections are mutually exclusive.

We will refer herein to petitioner as taxpayer, and to respondent as the Government. The facts and the statutory provisions are both lengthy and complex. We therefore set them forth in some detail.

The statutory scheme of the now-repealed excess profits tax was to separate corporate profits earned during the war years into two classes, normal and excess, and to tax each class of profits at different rates.

Under the 1942 law, applicable here, a corporate taxpayer first determined its ordinary net income, or "normal tax income", and then, by additions and subtractions to that figure, not material here, determined its "excess profits net income". From this last item, certain deductions are made, the most important of which is the "excess profits credit". This credit represents the statutory standard of normal earnings. Once this "excess profits credit" is determined it represents the profits (for 1942 in this case) which are subject to the normal tax, imposed at the rate of 40% of such profits. All of taxpayer's earnings above the "excess profits credit" (with exceptions not material here) are subject to the excess profits tax imposed at the rate of 90% of such profits.[1]

In the computation of a taxpayer's "excess profits credit" we have at least one instance in tax law where a taxpayer desires to have his normal profits as high as possible. For the higher the normal profits the greater the amount of taxpayer's earnings that will be taxed at the 40% rate rather than the 90% rate.

All but a small fraction of the "excess profits credit" is made up in this case by first taking taxpayer's actual earnings for the four years 1936 to 1939, inclusive. § 713(b), I.R.C.

For those four years taxpayer earned the following amounts:

| | |
|---|---:|
| 1936 | $ 89,422.67 |
| 1937 | 63,706.57 |
| 1938 | 38,127.75 |
| 1939 | 111,839.77 |
| Total, | $303,096.76 |

Under § 713(e) (1), the earnings in the lowest year (1938) are automatically raised by the "75% rule" to an amount equal to 75% of the average earnings of the other three years. This sum, ($66,242.25 in this case) is required to be substituted for the actual 1938 earnings. Considering this new figure for 1938, taxpayer's total for the four year base period is increased to $331,211.26, and the "average base period net income" is thus $82,802.82.

And when we take 95% of this "average base period net income", or the sum of $78,662.68, we have computed the excess profits credit. § 713(a) (1) (A).[2]

Therefore, in the absence of any further facts, $78,662.68 of taxpayer's 1942 earnings would be subject to the normal tax and all of its earnings over that amount would be taxed as excess profits at the rate of 90%.[3]

In the instant case additional facts are present: Taxpayer claims relief under § 722 and in pursuance of that claim it is stipulated that taxpayer has established that its normal output was interrupted in 1937 by strikes "* * * events peculiar in its experience, as provided by § 722(b)(1), I.R.C.". The Government has further stipulated that taxpayer has established that its actual 1937 earnings ($63,706.57) were abnormally low, and that "the fair and just amount representing normal earnings which would be used by [taxpayer] as its constructive average base period net income under the provisions of § 722 (exclusive of § 713), for the year 1942 would be determined after reconstructing earnings for the year 1937

---

[1] Cf. §§ 710, 711, 713, I.R.C., 26 U.S.C.A. Int.Rev.Code, §§ 710, 711, 713. Mertens Law of Fed. Inc. Taxation, § 42.01-3; See footnote 3.

[2] We shall designate this method of computing taxpayer's excess profits credit as the Government's method.

[3] We have simplified the foregoing discussion of the excess profits tax by eliminating other complicating features of the tax not relevant here.

\* \* \* from the actual amount \* \* \* to the reconstructed amount of $85,263.34."

Section 722 provides that when a taxpayer establishes (as taxpayer here has done by stipulation) that "the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income \* \* \* *the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter."* (Italics ours.)

It is also stipulated that taxpayer is not entitled to any other constructive adjustments to actual earnings under § 722 in the other three base period years.

Under § 722 taxpayer's earnings for the base period considering the reconstructed figure for 1937 would be:

| | | |
|---|---|---|
| 1936 | $ 89,422.67 | |
| 1937 | 85,263.34 | (reconstructed earnings under § 722) |
| 1938 | 38,127.75 | |
| 1939 | 111,839.77 | |
| Total | $324,653.53 | |
| Constructive average base period net income: | $ 81,163.38 | |
| 95% of above sum (excess profits credit) | $ 77,105.22 | |

By this method of computing the excess profits credit (and to which method we shall refer as Method 2) where § 722 alone is used without raising the 1938 earnings by the 75% rule of § 713(e)(1), taxpayer receives a lower excess profits credit than if the Government's method is adopted. Notwithstanding the fact that taxpayer has established its right to constructive earnings of $85,263.34 for 1937 under § 722, and its right to use a "constructive average base period net income *in lieu* of the average base period net income", the Government has allowed use of the "average base period net income" under § 713(e)(1), and the latter, or Government's, method of computing the excess profits credit is to taxpayer's advantage.

Thus far there is little dispute. Neither side desires to use Method 2. The crux of this case, however, lies in taxpayer's contention that it is entitled to use *both* § 722 to raise its 1937 earnings, *and* § 713(e)(1) to raise its 1938 figures. By this third, or taxpayer's method, as we shall hereafter refer to it, taxpayer's earnings for the base period years would be:

| | | |
|---|---|---|
| 1936 | $ 89,422.67 | |
| 1937 | 85,263.34 | (reconstructed under § 722) |
| 1938 | 71,631.44 | (raised under 75% rule of § 713(e)(1)) |
| 1939 | 111,839.53 | |
| Total | $358,157.22 | |

The average of this total is $89,539.31, and 95% of that sum, or the excess profits credit, is $85,062.35, rather than the $78,-662.68 allowed by the Government's method.

It is apparent that taxpayer's method requires *first,* the use of § 722 to raise the 1937 figures, and, *second,* the use of § 713 (e)(1) to raise the 1938 figures, since one of the three years used to obtain the new 1938 figure is the reconstructed (not the actual) figure for 1937 obtained by the use of § 722.

The solution of this case resolves itself into a problem of statutory construction, the key to which lies in determining whether, in computing the "constructive average base period net income" under § 722, the 75% rule of the "average base period net income" of § 713(e)(1) may also be used, or whether the two are mutually exclusive.

The Government determined a deficiency of $2,106.08 in taxpayer's excess profits tax liability for the year 1942 as a result of denying taxpayer's claimed relief under § 722. Resort was had to the Tax Court. In sustaining the Government's contention that court placed its decision on two grounds: First, that § 713(e)(1) does not permit the use of earnings constructed under § 722 for any of the three years of the base period used in raising the lowest year; and, second, that § 722 provides that the "constructive average base period net income", computed under that section shall be used "in lieu of" the "average base period net income", computed under § 713(e)(1).

The Tax Court concluded that petitioner had failed to establish that relief afforded by the use of § 713(e)(1) alone, and allowed by the Government, was less than a "fair and just amount representing normal earnings * * *" and therefore held that the Government had correctly determined taxpayer's excess profits tax liability for 1942.[4]

■ At the outset of our consideration of this case we are met by the Government's argument that § 732(c) deprives us of jurisdiction to review the determination of the Tax Court.

Section 732(c) provides: "If in the determination of the tax liability under this subchapter the determination of any question is necessary solely by reason of section 711(b)(1) (H), (I), (J) or (K), section 721, or section 722, the determination of such questions shall not be reviewed or redetermined by any court or agency except the [Tax Court]."

In James F. Waters Inc., v. C.I.R., 160 F. 2d 596, we held that § 732(c) is valid, and that Congress may preclude judicial review of the determinations of the Tax Court in respect to statutes such as § 722 which create special relief provisions "reminiscent of sovereign gracious clemency" Pohatcong Hosiery Mills, Inc., v. C.I.R., 3, Cir., 162 F.2d 146, 149. We think the determination of the question before the Tax Court involved both § 722 and § 713(e)(1).

It is of course possible to cast the problem, as the Government has done, solely in terms of § 722 by stating that taxpayer was allowed the benefits of § 713(e)(1) and that the only question is whether he is entitled to § 722 relief. But the nature of the § 722 relief sought by taxpayer should not be overlooked. Taxpayer concededly has established, under § 722, that its earnings for the year 1937 should be raised. Averaging said constructive 1937 earnings with taxpayer's actual earnings for the other three years of the base period (since taxpayer is not entitled to raise constructively its earnings for those other three years) would result in its excess profits credit being less than if its 1938 earnings are raised under § 713(e)(1) and its 1937 earnings are left unaffected by § 722.

Taxpayer asks to raise both 1937 and 1938 earnings by the use of both sections. It was this double relief that the Government refused to allow, and the determination of that question clearly was necessary by reason of both sections. For were it not for § 713(e)(1) taxpayer could have no question as to his tax liability to be determined.

By stipulation he established the right to raise the 1937 figures under § 722, and by stipulation he was not entitled to raise other years under that section. The determination of his tax liability can be resolved only by the determination of a question arising under both sections, namely, whether taxpayer may raise his 1938 earnings under § 713(e)(1) by using the constructive earnings of one year computed under § 722.

The Government concedes that "there is here involved only the question whether the § 722 construction should reflect the § 713(e)(1) adjustment."

It is true that § 722(d) requires a taxpayer to compute his tax without applying § 722, but while this may be an argument in favor of the Tax Court's decision, since taxpayer's method requires him to use § 722 before using § 713(e)(1), it is not an argument that the determination of the question is solely necessary by reason of § 722.

As indicated in Waters v. C.I.R., supra,

---

[4] See also The Homer Laughlin China Co., 7 T.C. 1325, where the same result was reached on virtually identical facts.

[160 F.2d 598] we think that Congress, in enacting § 732(c), was "motivated by practical considerations in limiting review of issues * * *", raised under the sections set out in § 732(c), and that the principal concern of Congress was that the abnormalties and unusual factual circumstances which give rise to relief under those sections should all "be decided by one group familiar with the problems involved." House Report 2333, 77th Congress, 2nd Session, quoted in Waters v. C.I.R., supra, footnote 7.

■ As to the scope of our review aside fom § 732(c), we think we have here a pure question of law, and while we "attach weight to the decision of points of law by an administrative body having special competence to deal with the subject matter" (Dobson v. C.I.R., 320 U.S. 489, 502, 64 S.Ct. 239, 247, 88 L.Ed. 248), we nevertheless have jurisdiction to review "rules of general applicability [announced by the Tax Court] on clear-cut questions of law." Crane v. C.I.R., 67 S.Ct. 1047, 1055; Pohatcong Hosiery Mills v. C.I.R., supra.

■ Turning to a consideration of the merits of this controversy, the answer to the problems lies (1) in the fact that two separate statutory concepts are involved, namely, "average base period net income" set out in § 713(e)(1), and "constructive average base period net income", found in § 722; (2) that in the event conditions permitting the use of the second concept are present, it is to be used "in lieu of" the first; and (3) that, therefore, both concepts cannot be used together.

The difference between the two concepts is revealed more clearly when it is remembered that the "average base period net income" is computed under § 713(e)(1) by automatic and inflexible methods. If certain conditions are present (as they were here) the earnings for the lowest year are raised to an amount equal to 75% of the average of the other three years. This is always done, regardless of what caused the low earnings in the one year.

On the other hand "constructive average base period net income" is established by the *discretionary* use of rules and methods thought to be the best way of correcting abnormal and unusual events, peculiar to the individual taxpayer's experience.[5]

The earnings of virtually all corporations may have been low in 1938; if so, all are raised under § 713(e)(1). But because of the flexible methods available in § 722 cases, elements personal to the taxpayer may be considered and its true normal earnings may be more accurately measured.

Section 722 requires that a taxpayer not only show that the tax (computed without benefit or application of § 722) results in an excessive and discriminatory tax,[6] but he must also establish "what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period. * * *"

When no abnormalities have occurred in the base period, or other events unusual and peculiar in the experience of the taxpayer, then the averaging methods of § 713(e)(1) will produce a satisfactory method of determining average base period earnings. But if the taxpayer has had some abnormal events in its base period (such as the 1937 strike here), then taxpayer is required by § 722 to establish that which would be a fair and just amount representing normal earnings. That is a different concept than the automatic statutory formula of § 713(e)(1), which may or may not

---

[5] See, E.P.C. 13, April 9, 1947, published in I.R. Bulletin No. 9, May 5, 1947, and P-H 1947 Fed. Tax Service, Par. 76,148. In this E.P.C., commenting on the Tax Court's decision in the instant case, it is said that in certain cases, parts of § 713 may be used in § 722 cases: "For example, the base period prescribed by § 713(b) is a device which is practical and appropriate to the determination of such a standard of earnings [the normal earnings of § 722], but the 75% rule, having no relationship to cause and effect, is not appropriate and will not be applied."

[6] Under § 722(b) the tax is considered excessive and discriminatory if it is shown, as taxpayer has shown here, that an event unusual in its experience occurred during the base year. Therefore, taxpayer has met the first requirement.

represent a "fair and just amount", since it requires an inflexible raising of the lowest year.

Taxpayer argues that there is no evidence that an average computed under § 713(e)(1) is *not* a fair and just amount. Conceding this to be true and that it is theoretically possible to use both sections, the fact remains that Congress has clearly provided in § 722 that a taxpayer must establish what *is* a fair and just amount representing normal earnings which he must then use as a "constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter." The only place the "average base period net income" is "otherwise determined [in the] subchapter" is § 713(e)(1).

There is no statutory authorization for using the 75% rule of § 713(e)(1) in computing the constructive average of § 722. On the other hand, we think there is a statutory prohibition against using both sections in that § 722 requires the constructive average to be used in lieu of the § 713 average.

■ Here taxpayer has established what would be a fair and just amount representing normal earnings *for the year* 1937. He contends he may also raise his 1938 earnings by § 713(e)(1), but that which is automatically raised may not be a fair and just amount, and one must be used in lieu of the other. Our remaining inquiry is, what constitutes the "fair and just amount representing normal earnings" which is to be used in lieu of the § 713(e)(1) average?

It seems clear that it means the *actual* earnings for each year in which no abnormality occurs, *and* the constructive earnings for years in which abnormalities, etc., within § 732 do occur, averaged together. This is the *constructive* average base period net income, and it is to be used in lieu of the § 713(e)(1) average which is designed to relieve automatically taxpayers who have no abnormalities or other events within § 732, but who do have a year of low earnings.

The regulations covering this subject (S 35.722-2(b) (1) of Regulations 112) provide: "§ 722(a) provides for the determina-

tion of a constructive average base period net income * * *. Therefore, in computing such amount a taxpayer is not entitled to use the rules provided by § 713(e) (1). * * * Since the constructive average base period net income is the fair and just amount representing normal earnings and will reflect adjustments for abnormally low base period years, a taxpayer having computed such amount is not entitled in addition to apply the rules provided by § 713 (e)(1)."

These Regulations set forth a reasonable and correct interpretation of the law and taxpayer's contention that the Regulations are invalid cannot be sustained on any of the grounds urged.

Taxpayer assails the decision of the Tax Court on several additional grounds, which, insofar as it is necessary to consider them, may be summarized as follows:

1. § 722(b) "entitles" a taxpayer to use § 713.

2. By the 1942 amendments to § 722 Congress did not intend to deprive a taxpayer of his right, which existed under the 1941 Act, to use both § 713 and § 722.

3. The two sections are in pari materia, and must be construed together so as to give full effect to both.

4. The constructive average must be used since taxpayer has established the two conditions precedent to the use of § 722.

■ First: Taxpayer's contention is that § 722 (b) by providing that "The tax computed under this subchapter * * * shall be considered to be excessive * * * in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713 * * * ", entitled it to use § 713.

We do not so read § 722 (b). It merely provides that it applies to a taxpayer who is entitled to use the excess profits credit based on income, pursuant to § 713. There are two methods of computing excess profits credit: the income method, and the invested capital method (§ 714 et seq.). Not all taxpayers are *entitled* to use the "excess profits credit based on income", i.e., the income method. Under § 712, only domestic corporations in existence prior to

January 1, 1940, are "entitled to use" both the income method of § 713 and the invested capital method. Other domestic corporations, and all foreign corporations must use the invested capital method.[7]

Section 722 (b) is not authority for the proposition that a taxpayer is entitled to use both § 713 (e) (1) and § 722; it merely refers to those corporations which are entitled to use the income method of § 713.

Second: It is true that § 722 in the 1941 Act did provide that the average base period net income, then to be determined under § 722 should be computed as in § 713. It is also true that the 1942 version of § 722 entirely omitted this provision and instead required a "constructive average" to be used "in lieu of" the § 713 average.

Under these circumstances, and with such a drastic alteration of the law, a comparison of the two acts warrants the conclusion that Congress which, in 1941, had permitted the two sections to be used together, declared in 1942 that the sections were mutually exclusive.

Taxpayer cites committee reports to show that the 1942 amendments were designed to broaden the relief granted under § 722; and cases holding that the repeal and simultaneous reenactment of substantially the same statutory provisions are to be construed as a continuation of the old statute. The statute being clear resort to extrinsic aids to construction is unnecessary.

It is contended that the "in lieu of" clause of § 722 leaves unanswered the question of whether the constructive average is an ordinary arithmetical average or an average computed under § 713 (e) (1). We do not agree. The constructive average of § 722 is to be used in lieu of the § 713 (e) (1) average; hence it cannot be the same average as that called for in § 713 (e) (1).

Taxpayer also contends that the "in lieu of" clause means that constructive "earnings" are to be used in lieu of the actual earnings of § 713. But § 722 does not so read. To adopt taxpayer's argument would do violence to the statutory language found therein.

Third: Having held that § 713 (e) (1) and § 722 refer to entirely different and mutually exclusive statutory concepts, it follows that rules relating to statutes in pari materia are not material. We repeat that the construction we adopt gives effect to § 722 when a constructive average is to be used, and to § 713 (e) (1) when an average is to be used.

Fourth: Taxpayer argues that since it has established both conditions precedent for the use of § 722, the tax must be determined by the constructive average. With this we agree.

But taxpayer goes further and contends that the constructive average must be computed in accordance with § 713 (e) (1) because taxpayer will otherwise be left with a tax which the statute declares to be excessive and discriminatory. With this we do not agree. The fact that taxpayer has shown the abnormality for 1937 entitles it to correct its 1937 figures under § 722. If it does this the excess profits credit, computed without use of § 713 (e) (1) turns out to be a lower figure in this case than if the § 713 (e) (1) average is used without reference to § 722. But because that is the result of using § 722 alone here, it does not follow that such use of § 722 alone nullifies § 713 (e) (1) in all cases, since in other instances where different earnings are involved, the use of § 722 alone would result in a higher excess profits credit than if § 713 (e) (1) alone were used.[8]

---

[7] Cf., Bickford, "Excess Profits Tax Relief", pp. 21, 22; 1944; Prentice-Hall.

[8] See Treas. Dep't. Bulletin on § 722, as amended by E.P.C. 16, June 2, 1947, quoted in CCH Standard Excess Profits Tax Reporter, Vol. 3A—1946, pg. 8337, and pg. 9395-6, wherein it is said:

"Accordingly, the mere existence of an event or circumstance under § 722 (b) does not automatically mean that the average base period net income is an inadequate measure of normal earnings. * * * But a taxpayer which has established the existence of one or more of the factors set forth in § 722 (b) * * * may be denied relief without a detailed and exact determination of normal earnings when it is clear that without such a determination normal earnings [computed under § 722] would not

Although taxpayer has established an abnormality for 1937 and so should use § 722 in lieu of § 713 (e) (1), which is for taxpayers who suffered no abnormalities during the base period, the Government has permitted taxpayer to use § 713 (e) (1) instead of § 722.

Other contentions have been made. We have considered them and find them to be without merit.

The decision of the Tax Court is affirmed.

exceed average base period net income [computed under § 713 (e) (1)] * * *.

"There is no test of whether 'average base period net income is an inadequate standard of normal earnings' other than a comparison of average base period net income and constructive average base period net income."

Here a comparison of the two shows that the average base period net income of taxpayer is higher than its constructive average base period net income. It follows, under the Treasury Department Bulletin, that the average base period net income is not "an inadequate standard of normal earnings" in this case.