**DOWD–FEDER, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10758.

United States Court of Appeals
Sixth Circuit.

March 28, 1949.

M. R. Schlesinger, of Cleveland, Ohio (M. R. Schlesinger, of Cleveland, Ohio, and Grossman, Schlesinger & Carter, of Cleveland, Ohio, of counsel, on the brief), for petitioner.

Carlton Fox, of Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, Lee A. Jackson and Carlton Fox, all of Washington, D. C., on the brief), for respondent.

Before HICKS, Chief Judge, and SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Dowd-Feder, Inc., has petitioned this court to review the decision of the United States Tax Court holding that there is a deficiency in the corporation's income tax for 1941 in the amount of $7,885.51. The case involves determination of the proper basis of computation of the taxpayer's excess profits credits.

The Tax Court held that there is no deficiency in the excess profits tax for that

year; but that where the amount of excess profits credits, computed by using average base period net income reconstructed under section 722 of the Internal Revenue Code, 26 U.S.C.A. § 722, is less than the credit resulting from application of the 75 per centum rule under section 713(e) (1) to the actual base period net income, the taxpayer, as is the situation in the case at bar, is not entitled to relief under section 722 in addition to the benefits of section 713(e) (1). This holding was based on the authority of Stimson Mill Co. v. Commissioner of Internal Revenue, 9 Cir., 163 F.2d 269, certiorari denied 332 U.S. 824, 68 S.Ct. 165, rehearing denied 332 U.S. 839, 68 S.Ct. 218, affirming 7 T.C. 1065. The two pertinent sections of the Internal Revenue Code are, in material part, set forth in the margin.[1] The case was tried in the Tax Court on a stipulation of fact.

■ From January 1, 1936, to the present time, Dowd-Feder, Inc., of Cleveland, Ohio, has been a distributor of Chrysler and Plymouth automobiles. As the result of a strike at the factories of the Chrysler Corporation from October 6th to November 28th, 1939, deliveries of new cars to its dealers were curtailed, in consequence of which Dowd-Feder, Inc., was unable to procure its normal allotment. The strike and the diminished operations resulting from it were "events unusual and peculiar in the experience" of the taxpayer, within the purview of section 722 of the Internal Rev-

[1] Section 722. "General relief—Constructive average base period net income. (a) General rule. In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in the cases described in the last sentence of section 722(b) (4) and in section 722(c), regard shall be had to the change in the character of the business under section 722(b) (4) or the nature of the taxpayer and the character of its business under section 722(c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income. (b) Taxpayers using average earnings method. The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer, * * *." 26 U.S.C.A. § 722(a) and (b) (1).

Section 713(e) (1). "Average base period net income—general average. The average base period net income determined under this subsection shall be determined as follows: (1) By computing the aggregate of the excess profits net income for each of the taxable years of the taxpayer in the base period, reduced by the sum of the deficits in excess profits net income for each of such years. If the excess profits net income (or deficit in excess profits net income) for one taxable year in the base period divided by the number of months in such taxable year is less than 75 per centum of the aggregate of the excess profits net income (reduced by deficits in excess profits net income) for the other taxable years in the taxpayer's base period divided by the number of months in such other taxable years (herein called 'average monthly amount') the amount used for such one year under this paragraph shall be 75 per centum of the average monthly amount multiplied by the number of months in such one year, and the year increased under this sentence shall be the year the increase in which will produce the highest average base period net income; (2) By dividing the amount ascertained under paragraph (1) by the total number of months in all such taxable years; and (3) By multiplying the amount ascertained under paragraph (2) by twelve." 26 U.S.C.A. § 713(e) (1).

enue Code, Dowd-Feder, Inc., in January 1944, applied for relief under section 722 with respect to the calendar years 1941 and 1942. The taxpayer established to the satisfaction of the Tax Court that, as a result of the Chrysler strike and the resultant interruption of its normal business, its actual earnings for 1939 were abnormally low, and that its actual average base period net income is an inadequate standard of normal earnings under the provisions of section 722(b) (1) of the Internal Revenue Code.

On January 30, 1945, the Commissioner of Internal Revenue issued a statutory notice determining that there is a deficiency in income tax liability of the petitioner for the year 1941 in the amount of $7,885.51, and that there was an over-assessment of excess profits tax liability for that taxable year in the amount of $6,552.18. In making this determination the application of the taxpayer for relief in 1941, under section 722, was partially allowed in the amount of $2,990.97 and disallowed to the extent of $1,933.51. The taxpayer has stipulated and agreed that the determination of the Commissioner that $61,010.60 represents a fair and just amount of normal earnings to be used as a constructive average base period net income, for the purpose of excess profits credit for 1941 only, under the provisions of section 722.

In its claim for refund of $10,313.57 for 1941, the taxpayer contends that it is entitled to an excess profits credit carry-back of the unused excess profits credit for 1942 in the amount of $29,894.40.[2] The contention is based upon the proposition that the excess profits credit for 1942 should be based upon a constructive average base period net income determined by applying both section 722 and the 75 per centum rule set forth in section 713(e) (1) of the Internal Revenue Code. Using this basis of computation, the petitioner contends that the allowable credit for 1942 should be $66,098.02. The Commissioner denied the contention and disallowed the claim for refund.

The Tax Court found that, in computing its excess profits tax for the taxable years involved, the petitioner is entitled to use an excess profits credit based upon net earnings within the base period years of 1936 to 1939, inclusive, in accordance with section 713 of the Internal Revenue Code, as amended. The Court pointed out that the Commissioner admits that the taxpayer's earnings for 1939 (prior to taxes) should be reconstructed under section 722 from the actual amount of $63,151.29 to the reconstructed amount of $88,338.43; and that the excess profits credit for 1942 would, by calculation, amount to $56,838.71.

But the taxpayer contends that, in addition to the adjustment computed by the Commissioner under section 722, its excess profits credit for 1942 should be computed by the addition of an increase in the excess profits net income for the year 1938, under section 713(e) (1), which would raise the excess profits credit to $66,098.02. The petitioner stipulates and agrees that, unless it is entitled to the adjustment claimed under section 713(e) (1) for the base period year 1938, it is entitled to no further constructive adjustments to actual earnings for the base period years 1936, 1937 and 1938 under section 722 of the Internal Revenue Code as presently constituted.

■ From the stipulation of facts adopted as findings by the Tax Court, it appears from the calculations therein, and is so declared, that inasmuch as the excess profits credit of $58,620.59, determined by averaging actual base period net income adjusted as to the year 1938 under section 713(e) (1), is *greater* than the excess profits

---

[2] Section 710(c) (3) (A). "Amount of unused excess profits credit carry-back and carry-over (A) Unused excess profits credit carry-back. If for any taxable year beginning after December 31, 1941, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such unused excess profits credit over the adjusted excess profits net income for the second preceding taxable year computed for such taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit, and (ii) without the deduction of the specific exemption provided in subsection (b) (1)." 26 U.S.C.A. § 710(c) (3) (A).

credit computed by the use of an average based on actual excess profits net income for 1936, 1937, and 1938, and excess profits net income for 1939 reconstructed under section 722, relief under that section for the year 1942 should be and is denied.

The petitioner agrees that, if it is not entitled to relief under section 722 of the Internal Revenue Code in addition to the benefits contained in Section 713(e) (1) of the Code, in computing the excess profits credit for the year 1942, the proposed deficiency and the over-assessment as set forth in the notice of deficiency of January 30, 1945, are correct and have been properly determined by the Commissioner.

In its opinion, the Tax Court states that the case has been considered in entirety by the Excess Profits Tax Council of the Bureau of Internal Revenue, which, on January 16, 1947, sustained the original determination set forth in the statutory notice of deficiency issued by the Commissioner on January 30, 1945.

The argument of petitioner here is, upon analysis, the same as that made in behalf of the taxpayer in Stimson Mill Co. v. Commissioner, supra. The contention is that the taxpayer is entitled to obtain the benefits of both section 713(e) (1) and section 722, affording special discretionary relief. As was pointed out by the Court of Appeals for the Ninth Circuit, Congress has provided in section 722 that a taxpayer must establish a fair and just amount representing normal earnings which he must then use as a "constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter"; and that section 713(e) (1) is the only section of the revenue law where the "average base period net income" is otherwise determined in the subchapter. It is then reasoned, correctly we think, that there is no statutory authorization for using the 75 per centum rule of section 713(e) (1) in computing the constructive average of section 722; but, to the contrary, there is a statutory prohibition against using both sections, inasmuch as section 722 requires the constructive average to be used in lieu of the average provided for in section 713(e) (1). Moreover, we agree with the Court of Appeals

that the Treasury Regulations relating to the subject matter constitute a reasonable and correct interpretation of the statutes: "Section 722(a) provides for the determination of a constructive average base period net income. * * * Therefore, in computing such amount a taxpayer is not entitled to use the rules provided by section 713(e) (1). * * * Since the constructive average base period net income is the fair and just amount representing normal earnings and will reflect adjustments for abnormally low base period years, a taxpayer having computed such amount is not entitled in addition to apply the rules provided by section 713(e) (1)." Section 35.722-2(b) (1) of Regulations 112.

Inasmuch as we are in accord with the basis of decision of the Ninth Circuit and of the Tax Court whose opinion was affirmed, we find no occasion for rewriting and rejecting arguments made by the taxpayer in the instant case which have been considered in detail and rejected in those opinions. In all material aspects relating to the merits we are in accord with the reasoning of the Ninth Circuit upon the points presented.

The Commissioner of Internal Revenue has raised a more troublesome question by his motion to dismiss the petition for review on the ground that this court is without jurisdiction by reason of section 732(c) of the Internal Revenue Code, 26 U.S.C.A. § 732(c), which provides: "Finality of determination. If in the determination of the tax liability under this subchapter the determination of any question is necessary solely by reason of [two specified sections], *or section 722,* the determination of such question shall not be reviewed or redetermined by any court or agency except the Board." [Italics supplied.]

The ensuing section, 732(d), added by the Revenue Act of 1942, provides that the determinations and redeterminations by any division of the Board involving any question arising under section 722 and another specified section, with respect to any taxable year, shall be reviewed by a special division of the Board which shall be constituted by the Chairman and consist of not less than three Board members. The section concludes: "The decisions of such spe-

cial division shall not be reviewable by the Board, and shall be deemed decisions of the Board." See 26 U.S.C.A. § 732. The Board of Tax Appeals is, as is well known, now the Tax Court of the United· States.

The Government argues that no substantial question has been or may be raised by the taxpayer under section 713(e) (1) of the Internal Revenue Code; and that there is nothing in the wording of that section, its legislative history, or the Treasury Regulations, which warrants the use in a computation made under it of a factor used by the Commissioner in determining whether and to what extent the taxpayer should be granted relief under section 722. It is pointed out that section 713(e) (1) came into the statute in 1942, when Congress enacted substantial changes in section 722; and that, if Congress had intended the interpolation of a special discretionary relief into a general statutory excess profits computation, such intention would have been manifested clearly in the statute. The point is emphasized that Congress, by expression, vested the administration of section 722 in the Commissioner and, by sections 732(c) and 732(d), expressly limited to the Tax Court review of the Commissioner's determinations; and that, by thus entrusting solely to the Commissioner and the Tax Court the grant of relief under section 722, and by the explicit provision that the decisions of the Commissioner and the Tax Court involving questions necessary to be determined solely by reason of that section should not be subject to appellate court review, Congress withdrew jurisdiction to review issues decided by the Commissioner and the Tax Court respecting the grant of relief under section 722.

Arguendo, the conclusion is drawn by respondent that whether a taxpayer may require the grant of relief under section 722 in addition to the benefits to be derived from 713(e) (1), and whether a taxpayer is entitled as a matter of right to read into section 722 the 75 per centum rule of section 713(e) (1), are questions the determination of which depends upon interpretation of section 722, and so are questions the determination·of which is necessary solely by reason of section 722.

In support of·its argument, the respondent cites a series of special assessment cases arising under statutes pertaining to excess profits taxes, wherein it was held that the federal appellate courts have no power to review determinations of the Board of Tax Appeals when no challenge for fraud or irregularities was made. Welch v. Obispo Oil Co., 301 U.S. 190, 57 S.Ct. 684, 81 L.Ed. 1033; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921; Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985; Duquesne Steel Foundry Co. v. Commissioner, 3 Cir., 41 F.2d 995, affirmed per curiam 283 U.S. 799, 51 S.Ct. 491, 75 L.Ed. 1422; Cleveland Automobile Co. v. United States, 6 Cir., 70 F.2d 365, certiorari denied 293 U.S. 563, 55 S.Ct. 88, 79 L.Ed. 663.

In the last cited case, we reviewed the Supreme Court decisions and drew the conclusion that once the·special discretionary power to grant relief under sections 327 and 328 of the Revenue Act of 1918, 40 Stat. 1093, is invoked and exercised, and no claim of fraud or other irregularity is asserted, neither the determination nor the factors used in computation, nor the result itself, is open to review. This court said: "We are not greatly impressed with the argument that the government's view of the special assessment provisions penalizes the taxpayer who resorts to them and compels him to gamble away a right to judicial review specially given him by statute for a blind remedy that may give him much less. The taxpayer is not compelled to invoke the relief sections of the statute. He has his right to judicial relief without resort to them, and whether he seeks such relief or the extraordinary relief which these sections afford, may perhaps depend upon the confidence he has in the merit of his grievance. Moreover, he has still his right of appeal from the findings of the Commissioner to the Board of Tax Appeals [citing authorities], and such appeal being to an independent agency in the executive branch of the government, especially established to review the Commissioner's decisions, is not in conflict with the view that sections 327 and 328 preclude judicial review of the exercise of administrative dis-

cretion. Williamsport Co. v. United States, supra." 70 F.2d 368.

 While the question of our jurisdiction to review the decision of the Tax Court in the instant case is close, we accord due weight to the decision of the Ninth Circuit Court of Appeals in the Stimson Mill Company case, supra [163 F.2d 273], and have reached the conclusion that we should not depart from its rationale, thus stated: "It is of course possible to cast the problem, as the Government has done, solely in terms of § 722 by stating that taxpayer was allowed the benefits of § 713(e) (1) and that the only question is whether he is entitled to § 722 relief. But the nature of the § 722 relief sought by taxpayer should not be overlooked. Taxpayer concededly has established, under § 722, that its earnings for the year 1937 should be raised. Averaging said constructive 1937 earnings with taxpayer's actual earnings for the other three years of the base period (since taxpayer is not entitled to raise constructively its earnings for those other three years) would result in its excess profits credit being less than if its 1938 earnings are raised under § 713(e) (1) and its 1937 earnings are left unaffected by § 722. Taxpayer asks to raise both 1937 and 1938 earnings by the use of both sections. It was this double relief that the Government refused to allow, and the determination of that question clearly was necessary by reason of both sections. For were it not for § 713(e) (1) taxpayer could have no question as to his tax liability to be determined. By stipulation he established the right to raise the 1937 figures under § 722, and by stipulation he was not entitled to raise other years under that section. The determination of his tax liability can be resolved only by the determination of a question arising under both sections, namely, whether taxpayer may raise his 1938 earnings under § 713 (e) (1) by using the constructive earnings of one year computed under § 722. * * * It is true that § 722(d) requires a taxpayer to compute its tax without applying § 722, but while this may be an argument in favor of the Tax Court's decision, since taxpayer's method requires him to use § 722 before using § 713(e) (1), it is not an argument that the determination of the question is solely necessary by reason of § 722." 163 F.2d 273. A pure question of law being presented, it was held that the decision of the Tax Court was reviewable by the Circuit Court of Appeals.

The motion of respondent for review is denied; and the decision of the Tax Court is affirmed.

