BLOCK ONE THIRTY-NINE, INC., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10925, 26636, 26637.  Promulgated February 21, 1952.

*Charles H. Draper, Esq.*, and *Marshall McDonald, Esq.*, for the petitioner.

*Irene F. Scott, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The only question presented in these proceedings is whether petitioner is entitled to any relief from excess profits taxes under section 722 (c) (3) of the Internal Revenue Code for the fiscal years ended February 28, 1943, 1944, and 1945, and for the tax period from March 1, to December 31, 1945.

The applicable statute is printed in the margin.[2]

It will be noted that section 722 (c) provides three grounds for relief. Petitioner does not claim that section 722 (c) (1) and (2) have any application. Petitioner claims that under section 722 (c) (3) its tax is excessive and discriminatory because its invested capital is abnormally low. If a taxpayer corporation qualifies for relief under section 722 (c) (3), it must establish constructive average base period net earnings under section 722 (a). Thus, while grounds for relief are all concerned with invested capital the manner of computing relief is basically the same as under section 722 (b).

At the beginning of this discussion it should be pointed out that it is not enough for a taxpayer corporation to prove that it is entitled to relief under one of the three grounds specified under section 722 (c). It must go further and establish a constructive average base period net income which will give it a larger excess profits credit than is given under the invested capital method. In discussing section 722 (c) in *Danco Co.*, 14 T. C. 276, this Court stated:

[At p. 282] The existence of one of the qualifying conditions specified in the statute is not sufficient to establish a taxpayer's right to relief under section 722 (c), for the reason that the condition may not result in the invested capital method being an inadequate standard for the determination of the excess profits credit or because it may be more than outweighed by other unusual war conditions operating to the taxpayer's advantage during the taxable years. Therefore, the taxpayer must demonstrate the inadequacy of its excess profits credit based

---

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(c) INVESTED CAPITAL CORPORATIONS, ETC.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because—

   (1) the business of the taxpayer is of a class in which intangible assets not includible in invested capital under section 718 make important contributions to income,
   (2) the business of the taxpayer is of a class in which capital is not an important income-producing factor, or
   (3) the invested capital of the taxpayer is abnormally low.

In such case for the purposes of this subchapter, such taxpayer shall be considered to be entitled to use the excess profits credit based on income, using the constructive average base period net income determined under subsection (a). \* \* \*

on invested capital by showing that the inadequacy results from one of the above factors and by establishing within the framework of section 722 (a) a fair and just amount representing normal earnings to be used as a constructive average base period net income.

[At p. 287] As we have previously pointed out, the mere existence of the qualifying features of section 722 (c) does not establish a taxpayer's right to relief. The petitioner must further demonstrate the inadequacy of its excess profits credit based upon invested capital by establishing under section 722 (a) a fair and just amount representing normal earnings to be used as a constructive average base period net income. Cf. *Lamar Creamery Co.*, 8 T. C. 928; *Irwin B. Schwabe Co.*, 12 T. C. 606.

For the purpose of a decision in the instant case we will assume that petitioner has proved its ground under section 722 (c) (3). But has it established a constructive average base period net income which will give it a larger excess profits credit than the Commissioner has allowed under the invested capital method? We do not think petitioner has met its burden of proof in this respect, even if we assume that petitioner has established as large a constructive average base period net income as it now claims in its briefs, namely, $176,555.89. Respondent contends that under petitioner's evidence it has not established any constructive average base period net income at all.

When this case was called after being set on the Galveston Calendar, petitioner was granted motions to file amendments to its petitions. It attached Forms 991 entitled "Amended Applications for Relief." On these documents the petitioner wishes to increase its claim for constructive average base period net income from $176,555.89 to $482,672.50, due to an alleged increase in the constructive base period normal net income of the Lamar Hotel. Petitioner claimed for the first time that this increase should be allowed because the profit cycle of the hotel industry, to which industry the Lamar Hotel belonged, was substantially different in length and amplitude from the profits cycle of general business. These facts were not presented early enough to be acted upon by the Commissioner. This would be contrary to the principle underlying our holding in *Blum Folding Paper Box Co.*, 4 T. C. 795. In the *Blum Folding Paper Box Co.* case we said:

The scheme of the statute is that applications for relief under section 722 are to be presented in full to the Commissioner, who handles them administratively and passes upon them in the first instance in an effort to settle them without suit. This means that the applications must set forth not only the grounds for relief, but also a statement of the facts which the Commissioner is to consider in support of the reasons given. *Additions are made by amendments before the claim is acted upon by the Commissioner*. The Tax Court merely reviews his final determination. See sec. 732 (a), I. R. C. The taxpayer may not, as here, file a superficial claim, leaving the Commissioner in ignorance

of the possible factual support for the claim, and then, after the resulting disallowance, come forward for the first time with the supporting statement of facts. That information is not a part of the application and consideration of it is beyond the scope of review by the Tax Court. [Emphasis added.]

Furthermore, in its brief and reply brief, petitioner appears to abandon the argument about the profit cycle of the hotel industry as covered by the amendments to its petitions. It now contends that the fair and just amount to be used as a constructive average base period net income for petitioner should be $176,555.89, the same as claimed in its original applications for relief and which would give an excess profits credit of $167,728.10. This proposed credit is smaller than the excess profits credits under the invested capital method computed on petitioner's tax returns and determined by respondent:

| Year ended | Credits on petitioner's tax returns | Credit determined by respondent |
|---|---|---|
| February 28, 1943 | $175,390.90 | $169,512.88 |
| February 29, 1944 | 179,204.45 | 173,003.02 |
| February 28, 1945 | 177,680.86 | 171,662.36 |
| March 1 to December 31, 1945 | 171,392.23 | 172,352.72 |

As we have already pointed out, section 722 (c) provides that the tax "shall be considered to be excessive and discriminatory * * * if the excess profits credit based on invested capital is an inadequate standard for determining excess profits" due to one of three statutory conditions.

What petitioner really is objecting to as we construe the argument contained in its brief, is not the inadequacy of the excess profits credit under the invested capital method, but the statutory treatment of interest. Section 711 (a) (2) (B) provides that under the invested capital method the deduction for interest shall be reduced by 50 per cent of certain interest payments in computing excess profits net income.[3] Under the income method no such adjustment is made for interest in computing excess profits net income in section 711 (a) (1), but the interest expenses as deductions reduce average base period net

---

[3] SEC. 711. EXCESS PROFITS NET INCOME.

(a) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1939.—The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made:

* * * * * * *

(2) EXCESS PROFITS CREDIT COMPUTED UNDER INVESTED CAPITAL CREDIT.—If the excess profits credit is computed under section 714, the adjustments shall be as follows:

* * * * * * *

(B) Interest.—The deduction for interest shall be reduced by an amount equal to 50 per centum of so much of such interest as represents interest on the indebtedness included in the daily amounts of borrowed capital (determined under section 719 (a));

income. Moreover, section 719 provides that 50 per cent of the average borrowed capital shall be part of invested capital. That is a statutory right to which petitioner is entitled and in the computation of petitioner's excess profits credit for each of the taxable years, the Commissioner has observed this statutory requirement. The petitioner does not contend otherwise. As an illustration which shows that what petitioner is really objecting to is the statutory treatment of interest as required by section 711 (a) (2) (B), we quote from its brief, as follows:

The effective excess profits credit based on borrowed capital is arrived at as follows:

1. Excess Profits Credit, 8% of invested capital of $2,118,911.00 (per Respondent's deficiency Notice of Computation for the fiscal year ended February 28, 1943) _____ $169,512.88
2. Deduct Excess Profits Credit based on average equity invested capital, 8% of $4,949.50_____ 395.96

3. Excess Profits Credit based on borrowed capital, 8% of $2,113,961.50 _____ $169,116.92
4. Deduct 50% of interest on borrowed capital which must be arbitrarily added to Petitioner's actual net income when Excess Profits credit based on invested capital is used_____ 86,943.26

5. Effective Excess Profits Credit based on borrowed capital_____ $82,173.66

. The excess profits credit actually allowed Petitioner on its borrowed capital is thus only 1.944% of Petitioner's total average borrowed capital of $4,227,923.00 as compared with 8% excess profits credit allowed on equity capital.

There is no such thing in the statute as petitioner terms in (5) above "Effective Excess Profits Credit based on borrowed capital $82,173.66." Respondent in his computation of petitioner's excess profits credit has used no such method. The respondent in Docket No. 10925 for the fiscal year ending February 28, 1943, has computed petitioner's excess profits credit based on invested capital as follows:

*Excess Profits Credit—Based on Invested Capital*

Invested Capital

|  | As corrected |
|---|---|
| Average equity invested capital_____ | $4,949.50 |
| Average borrowed invested capital_____ | 2,113,961.50 |
| Average invested capital_____ | $2,118,911.00 |
| Invested capital_____ | $2,118,911.00 |

Excess Profits Credit

Excess Profits Credit, 8% of $2,118,911.00 invested capital_____ $169,512.88

Respondent has made similar computations except as to amounts for the other taxable years and we hold that in doing so he has followed the statute. There is no warrant in law for petitioner's contention that respondent's method results in an "Effective Excess Profits Credit" of $82,173.66 based on borrowed capital, instead of excess profits credit of $169,116.92 based on borrowed capital which respondent has allowed.

Whereas section 722 (c) gives relief for taxpayers not entitled to use the income method, section 722 (b) applies to taxpayers entitled to use the income method. Section 722 (b) gives relief where the "average base period net income is an inadequate standard." A constructive average base period net income in excess of the average base period net income is an essential element in computing the excess profits credit under the income method in section 713.

In *Tober-Saifer Shoe Manufacturing Co.*, 17 T. C. 1042, excess profits tax relief under section 722 (b) was denied and the Court said:

The petitioner must reconstruct an average base period net income of more than $40,184.41 [the amount computed without the benefit of section 722], otherwise it would not be shown that its "average base period net income does not reflect the normal operation for the entire base period of the business."

See also *Lamport Co.*, 17 T. C. 1079. In *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220, 1227, which arose under section 722 (b), this Court said that the general purpose of section 722 is to increase the excess profits credit:

Section 722 is a general relief measure. Its purpose is to "afford relief in meritorious cases to corporations which bear an excessive tax burden because of an abnormally low excess profits credit." (Senate Finance Committee, Rept. No. 1631, 77th Cong., 2d Sess.)

The plan of the statute is to bring about an increase in such cases, in the statutory excess profits credit. * * *

In other cases, relief under section 722 has been limited to its specific terms of using "constructive average base period net income in lieu of the average base period net income" in computing the excess profits credit and has not been construed loosely as additional relief. The provisions of section 713 (e) raising the excess profit net income of the lowest base period year to 75 per cent of the average for the other years were not applicable in determining relief under section 722 in *Stimson Mill Co.*, 7 T. C. 1065, affd. 163 F. 2d 269, where this Court said:

[At p. 1068] The present controversy, under the above facts, is principally concerned with the application of those factors prescribed by the Internal Revenue Code by means of which a corporation may obtain a greater "credit" for

excess profits tax purposes than the one to which it would ordinarily be entitled by reason of the actual net earnings of the business in the base-period years 1936 through 1939. * * *

[At p. 1071] * * * Thus we have, by statutory definition, traced through all its stages, seen that nowhere in the determination of the "excess profits net income," which, and which only, is to be computed in the aggregate for four years, under section 713 (e) (1), can section 722 be utilized or included. * * *

See also *Dowd-Feder, Inc.*, 10 T. C. 345, affd. 173 F. 2d 673; and *Homer Laughlin China Co.*, 7 T. C. 1325.

Petitioner's proposed credit under section 722 based on a constructive average base period net income argued for in petitioner's brief, but which respondent contends petitioner has not proved, is smaller than the credits determined by the respondent and petitioner's returns based on invested capital. Its use, so far as we can see, would not afford petitioner any relief. Respondent's denial of relief to petitioner under section 722 is sustained.

Reviewed by the Special Division.

*Decisions will be entered under Rule 50.*