**SPRAGUE ELECTRIC COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 6155.

United States Court of Appeals
First Circuit.

Heard March 3, 1964.

Decided April 28, 1964.

Hugh C. Bickford, Washington, D. C., with whom Arthur G. Connolly, James M. Mulligan, Jr., Wilmington, Del., Edmund Burke, Boston, Mass., Connolly, Bove & Lodge, Wilmington, Del., and Hale & Dorr, Boston, Mass., were on brief, for petitioner.

Harry Marselli, Atty. Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Fred R. Becker, Attys., Dept. of Justice, were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

In this proceeding to review a decision of the Tax Court taxpayer, Sprague Electric Company, seeks to minimize or avoid impositions under the Excess Profits Tax Act of 1940 by proof that certain income was to be excluded as "abnormal" because attributable to " * * * research, or development of tangible property, patents, formulae, or processes * * * " carried on during pre-tax years. 1939 I.R.C. § 721(a) (2) (C). As to some items it was successful, but as to one, known as networks, it was not. At the threshold in this court respondent Commissioner moves to dismiss the petition on the ground that the decision of the Tax Court is final under section 732(c) of the 1939 Code, concededly applicable to the years in question, which provided,

"Finality of Determination. If * * * the determination of any question is necessary solely by reason of * * * section 721 * * * the determination of such question shall not be reviewed or redetermined by any court * * * except the Tax Court."

Our first question, accordingly, is the scope of this impediment.

Taxpayer is a manufacturer of electronic components. Some of its products are standard, but others are of its special design. In order to excel competitively it maintains a research department. Continuous activity is required of this department because competitively a product remains superior only for a few years, and there must be constant improvement and replacements. During the years 1936 to 1939 taxpayer, through experimentation with dielectrics, developed a group of markedly efficient general and special purpose condensers. Some of these it sold, beginning in 1942, to Massachusetts Institute of Technology (M.I.T.), which assembled them, together with standard choke coils and other elements, into circuits which taxpayer designates by the generic term "networks." The M.I.T. assembly was mechanically awkward, and M.I.T. shortly requested taxpayer to revise the procedure and to do the assembling itself. The development of the condensers had required several years. In a matter of weeks taxpayer perfected an efficient assembly and enclosed it in a container. An enormous number of such networks was sold for wartime radar. Throughout the later tax years (1942–1945) taxpayer continued to design and improve its networks, for which it established a separate classification on its books, but basically it still employed the special condensers it had developed in the prior years. In addition it sold such condensers separately for miscellaneous uses, military and civilian.

The Tax Court held taxpayer entitled to treat a portion of its ordinary sales of condensers as abnormal income within section 721(a) (2) (C) attributable to other years, but excluded from such treatment in their entirety networks and the condensers included therein. Its first ground was that pursuant to Treasury Regulations 112 Sec. 35.721–3 [1] the development and sale of networks from which net abnormal income was derived was due to a special wartime demand, so that such income was not attributable to other years under cases such as Breeze Corporations, Inc., 1951, 16 T.C. 587.[2] Alternatively it held taxpayer had failed to show that networks of the type sold in the tax years were not, as such, new products developed only in those years,[3] but that if, because of the substantial contribution of the condensers, a portion of the income was attributable to prior research taxpayer had failed to make the separation and offer the necessary accounting and other evidence to permit a mathematical segregation. Admittedly, this second ground was based upon an argument advanced for the first time in the Commissioner's post-trial brief. Taxpayer moved to "revise the opinion," but its motion was denied.

Taxpayer raises two other matters. Because it had succeeded with respect to some of its claims it was necessary, in order to apply the formula contained in the act, to determine amounts of taxpayer's income during a number of base years falling within the section 721(a) (2) (C) classification. The Tax Court so attributed income from a product known as an electrolytic condenser. Taxpayer objects to that determination on the

---

1. " * * *

 "Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. To the extent that any items of net abnormal income in the taxable year are the result of * * * increased physical volume of sales due to increased demand for * * * the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. * * * "

2. Although, admittedly, after the war a large civilian demand arose for networks, it is implicit in the court's holding that taxpayer failed to show that it would have realized net abnormal income from such a demand during the war years had it been free to fill it.

3. The court did not consider what might be the result for the last few of the tax years in question if it were in error on the first ground of decision.

ground that this item had already become standard, and had been so treated at the trial. In addition, it disagrees with the Tax Court's construction of the statute requiring its inclusion when, concededly, during the tax years it had received no net abnormal income therefrom. Finally, taxpayer objects because the Tax Court included administrative expense as part of its "direct costs and expenses"[4] in computing the statutory formula.

■■ We think the Commissioner's attempt to short-circuit the taxpayer must succeed. While there are recognized situations to which the finality section does not extend, none is here applicable. It has been loosely said that in spite of this provision there is power to review the Tax Court on errors of law as distinguished from errors of fact. However, examination of the cases discloses that such review has always involved another section of the act, so that the determination might be said not to involve "solely" a section enumerated and falling within section 732(c), see, e. g., Dowd-Feder, Inc. v. Commissioner, 6 Cir., 1949, 173 F.2d 673; Stimson Mill Co. v. Commissioner, 9 Cir., 1947, 163 F.2d 269, cert. den. 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400; May Seed & Nursery Co. v. Commissioner, 8 Cir., 1957, 242 F.2d 151, cert. den. 355 U.S. 839, 78 S.Ct. 62, 2 L.Ed.2d 51; Utility Appliance Corp. v. Commissioner, 9 Cir., 1958, 256 F.2d 39, Headline Pubs., Inc. v. Commissioner, 2 Cir., 1959, 263 F.2d 541, or has involved extraneous principles of law, so that it may be said that the taxpayer has not had a fair "determination" under the enumerated section, e. g., George Kemp Real Estate Co. v. Commissioner, 2 Cir., 1953, 205 F.2d 236, cert. den. 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384; Stern & Stern Textiles, Inc. v. Commissioner, 2 Cir., 1959, 263 F.2d 538, cert. den. 361 U.S.

831, 80 S.Ct. 80, 4 L.Ed.2d 73 (Tax Court held taxpayer bound by collateral estoppel), or for some reason or other there has been no determination at all, Arkansas Motor Coaches, Ltd. v. Commissioner, 8 Cir., 1952, 198 F.2d 189; cf. Packer Pub. Co. v. Commissioner, 8 Cir., 1954, 211 F.2d 612. Our citation of these cases does not necessarily mean that we would agree with all of them, cf. United States Rubber Co. v. Commissioner, 2 Cir., 1960, 274 F.2d 307, cert. den. 363 U.S. 827, 80 S.Ct. 1596, 4 L.Ed.2d 1522, but is simply to show the limits to which the courts have gone. Conceivably it might be argued that a refusal to allow a reopening after the taxpayer was allegedly caught unawares by the networks assembly argument, was extraneous error, cf. Industrial Trust Co. v. Commissioner, 1 Cir., 1947, 165 F.2d 142, 1 A.L.R.2d 144, preventing taxpayer's rights in this regard from being fairly "determined." However, this still would leave taxpayer faced with the alternative regulation-based ruling that net abnormal income due to what was found to be special wartime demand was not to be attributed to other years in any event. Conceivably, too, a question whether a regulation was within a permissible interpretation of the statute would be a matter not foreclosed by section 732(c). Cf. May Steel & Nursery Co. v. Commissioner, supra; Utility Appliance Corp. v. Commissioner, supra; Crowell-Collier Pub. Co. v. Commissioner, 2 Cir., 1958, 259 F.2d 860, cert. den. 358 U.S. 928, 79 S.Ct. 314, 3 L.Ed.2d 302; but cf. Brown Paper Mill Co. v. Commissioner, 5 Cir., 1958, 255 F.2d 77, cert. den. 358 U.S. 906, 79 S.Ct. 229, 3 L.Ed. 2d 227. Taxpayer does not, however, attack the validity of the regulation. Rather, it disputes the finding that networks came within it. Taxpayer's dialectics are inferior to its dielectrics. This is a typi-

---

4. "(3) Net abnormal income. The term 'net abnormal income' means the amount of the abnormal income less * * * (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income." 1939 I.R.C. § 721(a) (3).

cal matter that we are forbidden to review.

Turning to the electrolytic condensers, taxpayer's argument of substance suggests merely that the court erred in what it considered to be a product which fell within the classification involved. That, in addition to a question of fact, this may entail a question of the construction of section 721 does not mean the matter does not come squarely within the terms of section 732(c). See George Kemp Real Estate Co. v. Commissioner, 2 Cir., 1950, 182 F.2d 847, cert. den. 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624; Standard Hosiery Mills Inc. v. Commissioner, 4 Cir., 1957, 249 F.2d 469; Brown Paper Mill Co. v. Commissioner, supra. The same may be said as to the issue of "direct costs." A "determination of * * * tax liability" is equally a determination whether it involves questions of fact or questions of law. George Kemp Real Estate Co. v. Commissioner, 2 Cir., 1950, 182 F.2d 847. To the extent that there may be contrary language in Packer Pub. Co. v. Commissioner, supra, we do not follow it. Taxpayer's attack is really directed to the Congressional wisdom of enacting the finality section. We cannot be concerned with petitioner's speculations as to whether it is good or bad, psychologically, for a court not to be subject to review. It is immaterial whether, because of our "sprawling jurisdiction," American Coast Line, Inc. v. Commissioner, 2 Cir., 1947, 159 F.2d 665, 669, Congress thought that in this specialized area the Tax Court, with the specific internal review of its Special Division provided for by 1939 I.R.C. § 732(d), Green Spring Dairy, Inc. v. Commissioner, 4 Cir., 1953, 208 F.2d 471, was more competent than we, or whether it was interested in dispatch (sadly not attained in the present case, in which accrued interest already exceeds the tax deficiency). If we do not have appellate review we have neither the right nor the desire to seek it.

An order will be entered granting the Commissioner's motion to dismiss the petition.