STIMSON MILL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7437. Promulgated October 31, 1946.

*E. E. Adams, C. P. A.*, for the petitioner.

*Wilford H. Payne, Esq., Douglas L. Barnes, Esq., Ralph A. Gilchrist, Esq.*, and *Jaquin D. Bierman, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The Commissioner determined a deficiency of $2,106.08 in excess profits tax for the year 1942 as a result of denying to the petitioner relief under section 722 of the Internal Revenue Code. The only issue is whether petitioner is entitled to relief under section 722 of the Internal Revenue Code, in addition to the benefits of section 713 (e) (1) of the code.

The facts have all been stipulated. We adopt the stipulation as our findings of fact. Omitting formal parts and matters not considered material to examination of the issue, the stipulation reads:

1. The petitioner is a corporation organized under the laws of the State of Washington, with its principal office at * * * Seattle, Washington. Peti-

tioner's income and excess profits tax returns for the * * * year 1942 * * * were filed with the Collector of Internal Revenue for the District of Washington, at Tacoma, Washington.

2. The petitioner made a timely "Application for Relief Under Section 722 of the Internal Revenue Code" (Form 991) 'claiming a refund of excess profits tax for the taxable year 1942, which claim was filed with the Commissioner of Internal Revenue at Washington, D. C.

3. Petitioner's excess profits tax return (Form 1121) for the taxable year 1942 disclosed a total liability for excess profits tax in the amount of $249,262.34, which has been assessed. Thereafter, the Commissioner issued a statutory notice dated December 26, 1944, * * * in which it was determined that there was an additional liability in excess profits tax for said year in the amount of $2,106.08, making a total liability for said year of $251,368.42.

4. In determining the liability for excess profits tax for the year 1942, the Commissioner also determined in the statutory notice dated December 26, 1944, that the petitioner is not entitled to any relief under section 722 of the Internal Revenue Code. Accordingly, the claim for refund asserted in petitioner's application for relief, (Form 991), was disallowed for the year 1942 and notice of such disallowance was issued in accordance with the requirements of section 732 of the Internal Revenue Code.

5. In computing its excess profits tax, the petitioner is entitled to use an excess profits tax credit based upon net earnings within the "base period years" 1936 through 1939, in accordance with section 713 of the Internal Revenue Code, as amended.

6. In determining the liability of the petitioner for excess profits tax for the year 1942, * * * the respondent has computed an excess profits credit based upon the actual average base period net income computed under section 713 (e). Under the provisions of section 713 (e) (1) the benefits of the so-called 75% rule, which automatically increased excess profits net income for the year 1938, were secured to the petitioner. The excess profits credit using said actual income in accordance with the notice of deficiency attached to the petition, is in the amount of $78,662.68, computed as follows:

| Year | Actual Base Period Net Income |
| --- | --- |
| 1936 | $89,422.67 |
| 1937 | 63,706.57 |
| 1938 | 38,127.75 |
| 1939 | 111,839.77 |
| Aggregate for four base-period years | $303,096.76 |

| | Adjustment Under section 713 (e) (1) of Code |
| --- | --- |
| Aggregate of 1936, 1937 & 1939 | $264,969.01 |
| 75% of ⅓ | 66,242.25 |
| Total | $331,211.26 |
| Average | $82,802.82 |
| Excess-profits credit 95% | $78,662.68 |

7. Petitioner has established by the information submitted that its normal operation or output was interrupted in the year 1937 by strikes or other events

peculiar in its experience, as provided by section 722 (b) (1), I. R. C. It has also established that because of those events the actual earnings for 1937 in the amount of $63,706.57 were abnormally low. On the basis of the facts submitted, the fair and just amount representing normal earnings which would be used by the petitioner as its constructive average base period net income under the provisions of section 722 (exclusive of section 713), for the year 1942 would be determined after reconstructing earnings for the year 1937 (prior to taxes) from the actual amount of $63,706.57 to the reconstructed amount of $85,263.34. The petitioner is not entitled to any other or further constructive adjustments to actual earnings in the remaining base period years 1936, 1938 and 1939 under section 722 of the Code as presently constituted.

8. The petitioner, pursuant to its duly filed applications for relief under section 722, I. R. C., for the taxable years 1940 and 1941, established by information submitted that its normal operation or output was interrupted in 1937 by strikes or other events peculiar in its experience, as provided by section 722 (b) (1), I. R. C. With respect thereto the same determination was made as to 1937 and as to the excess profits credit after the application of section 722, as set forth in paragraph (7) above. However, the excess profits credit of $77,105.22 so determined was greater than the excess profits credit under section 713 which was used by the petitioner in its returns for 1940 and 1941 in the computation of its excess profits tax for said years for the reason that the provisions of section 713 (e) (1) were not applicable with respect to such years. Accordingly, the petitioner was allowed an increase in its excess profits credit and corresponding tax benefits for 1940 and 1941 by reason of the application of section 722.

9. If, as petitioner contends, the corporation is entitled under the law to compute its excess profits credit for the year 1942 by reconstruction of its base-period income under section 722 as set forth in paragraph 7 of the stipulation, and also by application of the provisions of section 713 (e) (1) of the Code, the excess profits credit to be used in determining its excess profits tax liability for said year is the amount of $85,062.34, computed as follows:

| Year | Base period net income reconstructed under section 722 |
| --- | --- |
| 1936 | $89,422.67 |
| 1937 | 85,263.34 |
| 1938 | 38,127.75 |
| 1939 | 111,839.77 |
| Aggregate for four base-period years | $324,653.53 |

| | Adjustment under section 713 (e) (1) of Code |
| --- | --- |
| Aggregate of 1936, 1937 and 1939 | $286,525.78 |
| 75% of 1/3 | 71,631.44 |
| Total | $358,157.22 |
| Average | $89,539.31 |
| Excess profits credit 95% | $85,062.34 |

10. Petitioner does not contest the proposed deficiency in excess profits tax as set forth in the statutory notice, except by reason of its claim that it is entitled to relief under section 722 of the Code in addition to the benefits provided

by section 713 (e) (1). Accordingly, it is agreed that the proposed deficiency in the amount of $2,106.08 as set forth in the statutory notice dated December 26, 1944, is due and has been properly assessed by the respondent since the petition was filed.

11. If it is held, in accordance with the respondent's determination in the statutory notice, that petitioner is not entitled to relief under section 722 in addition to the benefits allowed by section 713 (e) (1) of the Code, then this Court may enter its decision that there is no further deficiency in excess profits tax due from, or overpayment in such tax due to, the petitioner for the year 1942, and that petitioner's correct liability in excess profits tax for said year is in the amount of $251,368.42.

12. If it is held, in accordance with the petitioner's contention in this proceeding, that the petitioner is entitled to compute its excess profits credit for the taxable year 1942 using both sections 722 and 713 (e) (1) of the Code, then it is agreed that petitioner's excess profits tax credit is to be computed in the manner specified in paragraph 9 of this stipulation, above, and that petitioner has overpaid its excess profits tax for said year in an amount to be determined in accordance with a recomputation of liability under Rule 50 of The Tax Court's Rules of Practice.

The present controversy, under the above facts, is principally concerned with the application of those factors prescribed by the Internal Revenue Code by means of which a corporation may obtain a greater "credit" for excess profits tax purposes than the one to which it would ordinarily be entitled by reason of the actual net earnings of the business in the base-period years 1936 through 1939. The particular point at issue is whether section 713 (e) (1) and section 722 of the Internal Revenue Code [1] are to be applied together in order to obtain the cumu-

---

[1] SEC. 713. EXCESS PROFITS CREDIT—BASED ON INCOME.

(a) AMOUNT OF EXCESS PROFITS CREDIT.—The excess profits credit for any taxable year, computed under this section, shall be—

(1) DOMESTIC CORPORATIONS.—In the case of a domestic corporation—

(A) 95 per centum of the average base period net income.

(B) Plus 8 per centum of the net capital addition as defined in subsection (g), or

(C) Minus 6 per centum of the net capital reduction as defined in subsection (g).

\* \* \* \* \* \* \*

(d) AVERAGE BASE PERIOD NET INCOME—DETERMINATION.—

(1) DEFINITION.—For the purposes of this section the average base period net income of the taxpayer shall be the amount determined under subsection (e), subject to the exception that if the aggregate excess profits net income for the last half of its base period, reduced by the aggregate of the deficits in excess profits net income for such half, is greater than such aggregate so reduced for the first half, then the average base period net income shall be the amount determined under subsection (f), if greater than the amount determined under subsection (e).

\* \* \* \* \* \* \*

(e) AVERAGE BASE PERIOD NET INCOME—GENERAL AVERAGE.—The average base period net income determined under this subsection shall be determined as follows:

(1) By computing the aggregate of the excess profits net income for each of the taxable years of the taxpayer in the base period, reduced by the sum of the deficits in excess profits net income for each of such years. If the excess profits net income (or deficit in excess profits net income) for one taxable year in the base period divided by the number of months in such taxable year is less than 75 per centum of the aggregate of the excess profits net income (reduced by deficits in excess profits net income) for the other taxable years in the taxpayer's base period divided by the number of months in such other taxable years (herein called "average monthly amount") the amount used for such one year under this paragraph shall be 75 per centum of the average monthly amount multiplied by the number of months in such one year, and the year increased under this sentence shall be the year the increase in which will produce the highest average base period net income.

lative benefits sought by the petitioner, or whether, as the respondent contends, each of these sections is mutually exclusive of the other.

The respondent's position is clearly set forth in section 35.722–2 (b) (1) of Regulations 112, as amended by T. D. 5415, 1944 C. B. 404. The regulations provide in part:

(1) Section 722 (a) provides for the determination of a constructive average base period net income to be used in lieu of the actual average base period net income in those cases to which section 722 is applicable. Therefore, in computing such amount a taxpayer is not entitled to use the rules provided by section 713 (e) (1), relating to increase in base period net income of lowest year of base period * * *. Since the constructive average base period net income is the fair and just amount representing normal earnings and will reflect adjustments for abnormally low base period years, a taxpayer having computed such amount is not entitled in addition to apply the rules provided by section 713 (e) (1). * * *

Petitioner, on brief, challenges the above regulation and states that the case must stand or fall on the validity of it.

---

SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that in the cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer.

\* \* \* \* \* \* \*

(d) APPLICATION FOR RELIEF UNDER THIS SECTION.—The taxpayer shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section, except as provided in section 710 (a) (5). The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. If a constructive average base period net income has been determined under the provisions of this section for any taxable year, the Commissioner may, by regulations approved by the Secretary, prescribe the extent to which the limitations prescribed by this subsection may be waived for the purpose of determining the tax under this subchapter for a subsequent taxable year.

Tersely stated, the question here is whether the petitioner may apply section 713 (e) (1) to the year 1938 *after* applying section 722 (a), so as to reconstruct excess profits net income for the year 1937 from the actual figure $63,706.57, to $85,263.34. The respondent contends that section 713 (e) (1) may be applied to raise the average base period net income by raising the income of 1938 from the actual amount, $38,127.75, to $66,242.25, or 75 per cent of the average of 1936, 1937, and 1939, but that the same process may not be applied, as petitioner wishes, after 1937 income is raised under section 722 (a). Petitioner's method produces a 95 per cent excess profits credit of $85,062.34; while respondent's method produces a 95 per cent excess profits credit of $78,662.68. As seen from the facts above, it is agreed that the petitioner has established interruption of output in 1937 because of a strike, to the extent that:

* * * the fair and just amount representing normal earnings which would be used by the petitioner as its constructive average base period net income under the provisions of section 722, (exclusive of section 713), for the year 1942 would be determined after reconstructing earnings for the year 1937 (prior to taxes) from the actual amount of $63,706.57 to the reconstructed amount of $85,263.34. * * *

The respondent, however, contends that though under law and regulation section 713 (e) (1) may be applied, section 722 (a) may not first be applied, and then the result used under section 713 (e), for to do so does not establish the "fair and just amount representing normal earnings" to be used as a "constructive average base period net income," under section 722; and respondent points out that if 1937 income is increased, under section 722, to $85,263.34, and then the four years averaged (using $38,127.75, the *actual* income for 1938, instead of 75 per cent of the other three years, *after* increasing 1937 income to $85,263.34), the average would be $81,163.38 and the 95 per cent credit $77,105.22, which is less than the average of $82,803.89 and 95 per cent credit of $78,662.68, computed under section 713 (e) (1) by using actual earnings, and allowed by the respondent.

Both petitioner and respondent have argued the question at length and from various angles. Though we have carefully considered all such views, after examination thereof and of the statutes involved, we think the proper conclusion may be stated, without dwelling on all. In our opinion, the respondent's view should be sustained, for the following reasons: The statute does not permit computation under section 713 (e) (1) by using, for any base period year, not the actual income, but an income reconstructed under section 722 (a). Careful scrutiny of the applicable provisions reveals that "average base period net income," under section 713 (e) (1), is to "be determined as follows:

(1) By computing the aggregate of the *excess profits net income* for each of the taxable years of the taxpayer in the base period." (Then follows the provisions as to consideration of deficits and application of the "75% rule.")  We supply the emphasis on "excess profits net income," for only such income is to be used in the computation, and excess profits net income is a specific statutory concept, elsewhere defined.  The definition is found in section 711 (a), as follows:  "The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year  *  *  *" (with certain adjustments not here pertinent.)  Section 13 (a) (2) says that "normal-tax net income" means the adjusted net income minus the credit for dividends received provided in section 26 (b)"; and "adjusted net income" is defined in section 13 (a) (1) as "net income minus the credit provided in section 26 (a), relating to interest on certain obligations of the United States and Government corporations."  Finally, "net" income is defined by section 21 (a) as "Gross income computed under section 22, less the deductions allowed by section 23."  Thus we have, by statutory definition, traced through all its stages, seen that nowhere in the determination of the "excess profits net income," which, and which only, is to be computed in the aggregate for four years, under section 713 (e) (1), can section 722 be utilized or included.  Yet the petitioner has done precisely that—for it computes base period net income under section 713 (e) (1) in order to raise 1938 earnings to 75 per cent, and computes the 75 per cent after raising the earnings of 1937 under section 722 (a) because of the strike in that year.  The statute, section 713 (e) (1), does not so permit, for it allows aggregation of only the "excess profits net income" of each of the four years, and not after any reconstruction under section 722.

If there were any doubt as to whether the text of section 713 (e) permitted use of anything except "excess profits net income" in the base period (thus excluding any procedure or calculations under section 722), such doubt would clearly be resolved by attention to the definition of "average base period net income" in section 713 (d), where it is defined as the amount determined under subsection (e), "For the purposes of this section"; and by attention to the fact that subsection (e) says that the average base period net income "determined under this subsection" shall be determined by computing the aggregate of the excess profits tax net income for the base period years. Thus we see the average base period net income under section 713 is a concept limited to the purposes of that section only, no statutory authority appearing for applying the same concept in connection with the relief afforded by section 722.  Yet, the petitioner, in arguing for

its use of section 722 as to the year 1937 in calculating the 75 per cent average for 1938, contends, in effect, that section 713 (e) furnishes the only concept of the "normal earnings to be used as a constructive average base period net income," under the text of section 722, so that section 722 must, in effect, take normal earnings as being the amount arrived at after application of the 75 per cent rule under section 713 (e) (1). The petitioner contends, in short:

\* \* \* Since the "fair and just amount" to be established represents a four-year average and the effect of abnormal conditions must be measured in terms of the excess profits net income of the several years, there is no method of obtaining such average other than the formula of section 713 (e) and no authority for emasculating that formula.

Elsewhere on brief petitioner summarizes its view as:

The "constructive average base period net income" of section 722 is the same concept as the "average base period net income" of section 713, save only for a substitution of values.

Again the petitioner states on brief its "view that the use of the section 713 formula in computing constructive average base period net income is a *matter of right.*" In other words, the petitioner argues that it is entitled to use section 722 (a) because it has established the requirement thereof as to what would be a fair and just amount representing normal earnings used as a constructive average base period net income, because it has used the 75 per cent formula of section 713, and such formula produces *per se* the "fair and just amount representing normal earnings," whereas the respondent's view is that the 75 per cent formula of section 713 does not of itself establish "a fair and just amount representing normal earnings to be used as a constructive average base period net income," for the purposes of section 722. The above examination of section 713 (e) and the definitions of the "excess profits net income" there to be used as basis of computation, and the language of section 713 (d) and (e) as to the purposes thereof being limited to that subsection, are altogether convincing that the formula of section 713 (e) can not be exported to section 722 (a) to furnish the only test of "fair and just amount" or of "normal earnings" to be used as constructive average base period net income. Petitioner's view, moreover, makes the constructive average under section 722 the same as the statutory average under section 713 (e). That is indeed the gist of petitioner's view. If that were so, the use of the word "constructive" in section 722 (e) would be superfluous and meaningless. Moreover, had this been the intent, the statute, section 722, would logically have referred definitely to the average established by section 713 (e); and section 713 (d) and (e) (1) would not, as

above noted, have specifically limited the effect of the definition of average base period net income to section 713.

The above considerations convince us that a petitioner under section 722 could establish a fair and just amount representing normal earnings independently of, and without reference to, section 713 (e). Even if we assume, as petitioner argues, that the "normal earnings" mentioned in section 722 must be adjudged normal only because complying with the only test supplied, that is, by the test of section 713 (e) (i. e., when the lowest year is raised to 75 per cent of the average of the other three), still, such "normal earnings" might not be "a fair and just amount." Two elements are involved, normal earnings, and a fair and just amount; and we can envisage circumstances under which an amount determined under section 713 (e) would not be a fair and just amount. Thus, the actual earnings for a certain year might be very low because of dishonest or illegal practices on the part of a corporation, and the automatic raising of that amount to 75 per cent of the three-year average under section 713 (e) might, therefore, not represent a fair and just amount. (It is not suggested that there were such practices in this case.)

Another compelling reason, in our opinion, requires that the respondent's view be sustained. Section 722 provides that the constructive average base period net income, constructed under that section shall, in the determination of the tax, be used "in lieu of the average base period net income otherwise determined under this subchapter." The subchapter includes section 713. This language, therefore, to us indicates that there is a difference between constructive average and the average under section 713 (e), not only because use of the word "constructive" plainly indicates something different than the actual average, but also because the average "otherwise determined under this subchapter" must necessarily include, if it does not specifically point to, the average determined under section 713 (e). We consider it inescapable that the average constructed under section 722 must take the place of any average elsewhere determined in the same subchapter, and that nothing but identity of the constructive average base period net income and the average otherwise determined under the subchapter could prevent the substitution of the constructive average—yet, it is plain that the words "in lieu of" of themselves are strong indication that some other average is different from that which is constructive. To this we add the effect of "otherwise determined." Some other average, within the concept of section 722, has been determined *otherwise* than under that section, and is not to be used in section 722. Plainly, we think this disposes of any idea of identity of the constructive average base period net income under

section 722 with the specific statutory average set up in section 713, by the use, as we have above seen, of "excess profits net income," definition of which does not include income determined under section 722.

In *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220, we considered application of section 722. We there said that the phrase "an inadequate standard of normal earnings" found in section 722 (b) "refers to a standard or measure of earnings which falls below that established over a reasonable length of time and under normal conditions * * *." Such is the proper criterion here, for the statute requires a "fair and just amount representing normal earnings," and not the statutory concept relied upon by the petitioner and imported from section 713 (e) (1), where it is set up as "determined under this subsection" and "for the purposes of this section" and as expressed in section 713 (d) (1). In our view, the petitioner has failed to establish that the relief afforded by application of section 713 (e) (1) and allowed by the Commissioner, and using unreconstructed figures for 1937, is less than a fair and just amount representing normal earnings over " a reasonable length of time and under normal conditions" to be used as a constructive average for the base period, and, therefore, in our view, further relief is not shown to be necessary. It was more than an actual average over the four years, even though 1937 be reconstructed because of the strike.

The applicable provision of the regulations to the effect that a taxpayer claiming relief under section 722 is not entitled to use the rules provided by section 713 (e) (1) is, in our opinion, within the statute and validly applied to the facts here at hand.

We conclude and hold that the petitioner may not have relief under section 713 (e) (1) upon a basis of reconstructing income in another year under section 722; and that therefore the petitioner has not established a fair and just amount representing normal earnings to be used as a constructive average base period net income under section 722 (a), in any amount greater than the amount allowed by the respondent under section 713 (e) (1), using for the year 1937 the actual excess profits net income for that year. Therefore, as stipulated by the parties, in case of the above holding,

*Decision will be entered that there is no further deficiency in excess profits tax due from, or overpayment in such tax due to, the petitioner for the year 1942, and that petitioner's correct liability in excess of profits tax for said year is in the amount of $251,368.42.*

Reviewed by the Special Division.