THE DAYTON RUBBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47294, 53682. Filed May 31, 1956.

*Frank J. Albus, Esq.*, for the petitioner.
*James Q. Smith, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* These consolidated proceedings involve the total disallowance by respondent of petitioner's applications for relief under section 722 of the Internal Revenue Code of 1939, as amended. In these applications petitioner claims the refund of all the excess profits taxes it paid for certain taxable years, as follows:

| Docket No. | Taxable year ended October 31 | Excess profits tax paid |
|---|---|---|
| 47294 | 1941 | $93, 967. 33 |
| 53682 | 1942 | 561, 945. 47 |
| 53682 | 1944 | 681, 903. 06 |
| 53682 | 1946 | 402, 041. 09 |

Petitioner paid no excess profits taxes for the taxable years ended October 31, 1943, and October 31, 1945.

The only issue is whether petitioner is entitled to relief under section 722. More specifically it is whether in establishing the constructive average base period net income under section 722 (a) petitioner is also entitled to the benefits of the so-called growth formula used in determining its average base period net income under section 713 (f), or whether these two sections of the Code of 1939, as amended, are mutually exclusive.

All the facts were stipulated. Only those facts which are deemed necessary to an understanding of the law question involved are summarized and set forth below.

Petitioner was incorporated under the laws of the State of Ohio on May 13, 1905, as "The Dayton Rubber Manufacturing Company." On April 1, 1947, the name was changed to "The Dayton Rubber Company." The principal plant, manufacturing facilities, and offices of petitioner are located at Dayton, Ohio.

Petitioner filed its income and excess profits tax returns with the then collector of internal revenue for the first district of Ohio at Cincinnati.

Petitioner keeps its books on the accrual basis of accounting and reports its income for Federal income tax purposes on the basis of a fiscal year ending October 31.

Petitioner's "base period" as that term is defined in section 713 (b) (1) (A) of the 1939 Code, as amended, is the 4-year period beginning November 1, 1936, and ending on October 31, 1940.

,For many years prior to its base period petitioner had manufactured tires and tubes, belts, rollers, and miscellaneous products under separate divisions. In 1938, petitioner set up a new division known as the textile division wherein it commenced the manufacture of a line of products for use by the textile industry. Respondent recognized the setting up of this new division as a "change in the character of the business" of petitioner as that term is used in section 722 (b) (4) of the 1939 Code, as amended. For the remaining 3 years of the base period the operation of the new division resulted in net losses of $11,586 and $4,393 for fiscal 1938 and fiscal 1939, respectively, and an excess profits net income of $8,306 for fiscal 1940. The parties have stipulated that if petitioner had begun operating the new division 2 years earlier, it would have realized during the base period from the new division alone a constructive average base period net income of $179,136 (applicable to all fiscal years after fiscal 1941). The parties have further stipulated that due to the application of the variable credit rule and Federal income taxes, the constructive average base period net income from the operation of the new division alone (applicable to the fiscal year 1941) is $100,316. It is also agreed that the variable credit rule has no application to any of the fiscal years after the fiscal year ended October 31, 1941.

Petitioner's average base period net income computed under section 713 (f) of the 1939 Code, as amended, for the taxable years in question, is as follows:

| Base period years ended October 31 | Actual excess profits net income (all divisions) | | | |
| --- | --- | --- | --- | --- |
| | Year ended October 31 | | | |
| | 1941 | 1942 | 1944 | 1946 |
| 1937 | $519,230 | $677,180 | $677,180 | $677,180 |
| 1938 | 379,219 | 489,365 | 489,534 | 489,534 |
| 1939 | 894,106 | 1,093,497 | 1,093,497 | 1,093,497 |
| 1940 | 508,708 | 622,062 | 622,061 | 622,061 |
| Total | $2,301,263 | $2,882,104 | $2,882,272 | $2,882,272 |
| Arithmetic average | $575,316 | $720,526 | $720,568 | $720,568 |
| Total 2d half b. p | 1,402,814 | 1,715,559 | 1,715,558 | 1,715,558 |
| Total 1st half b. p | 898,449 | 1,166,545 | 1,166,714 | 1,166,714 |
| Excess of 2d half | $504,365 | $549,014 | $548,844 | $548,844 |
| One-half of excess | 252,182 | 274,507 | 274,422 | 274,422 |
| Total 2d half b. p | 1,402,814 | 1,715,559 | 1,715,558 | 1,715,558 |
| Total | $1,654,996 | $1,990,066 | $1,989,980 | $1,989,980 |
| ABPNI (one-half) | 827,498 | 995,033 | 994,991 | 994,991 |

Petitioner's actual excess profits net income for the base period, after eliminating the actual operations of the new textile division

during the base period, applicable to the taxable years in question, is as follows:

| Base period years ended October 31 | Actual excess profits net income (all divisions except textile) | | | |
| | Year ended October 31 | | | |
| | 1941 | 1942 | 1944 | 1946 |
| 1937 | $519,230 | $677,180 | $677,180 | $677,180 |
| 1938 | 390,805 | 500,951 | 501,120 | 501,120 |
| 1939 | 898,499 | 1,097,890 | 1,097,890 | 1,097,890 |
| 1940 | 500,402 | 613,756 | 613,755 | 613,755 |
| Total | $2,308,936 | $2,889,777 | $2,889,945 | $2,889,945 |
| Arithmetic average | 577,234 | 722,444 | 722,486 | 722,486 |

Petitioner's actual excess profits net income of its new textile division for all years from its inception to October 31, 1946, inclusive, compared with its actual excess profits net income of its other divisions, is as follows:

| | Actual excess profits net income | |
| Fiscal year ended October 31 | Textile division | Other divisions |
| 1938 | ($11,586) | $500,951 |
| 1939 | (4,393) | 1,097,890 |
| 1940 | 8,306 | 613,756 |
| Total for 3 years in base period | ($7,673) | $2,212,597 |
| 1941 | 162,758 | 883,848 |
| 1942 | 383,417 | 1,411,890 |
| 1943 | 154,223 | 1,361,214 |
| 1944 | 268,568 | 1,851,441 |
| 1945 | 180,512 | (303,122) |
| 1946 | 60,919 | 3,799,654 |
| Total for the 6 excess profits tax taxable years | $1,210,397 | $9,004,925 |

Petitioner contends that it is entitled to a constructive average base period net income under section 722 (a) of the 1939 Code, as amended, determined as follows, by using the principles of the growth formula contained in section 713 (f) of the 1939 Code, as amended (computation shown for fiscal year ended October 31, 1942, only):

| Fiscal year ended October 31 | 1 Actual excess profits net income after eliminating textile division | 2 Section 722 average for textile division | 3 Total of columns 1 and 2 |
| 1937 | $677,180 | $179,136 | $856,316 |
| 1938 | 500,951 | 179,136 | 680,087 |
| 1939 | 1,097,890 | 179,136 | 1,277,026 |
| 1940 | 613,756 | 179,136 | 792,892 |
| | $2,889,777 | $716,544 | $3,606,321 |

```
Total 2d half (column 3)_____ $2,069,918
Total 1st half (column 3)_____  1,536,403

Excess of 2d half over 1st half_____    533,515
One-half of excess_____    266,757
Add: Total of 2d half_____  2,069,918

        Total _____ $2,336,675
CABPNI (one-half)_____ $1,168,337
```

The respondent contends that in determining whether petitioner is entitled to any relief under section 722 the stipulated constructive average base period net income for the new textile division of $100,316 applicable to fiscal year 1941 and $179,136 applicable to all subsequent fiscal years should be added to the arithmetic average base period net income of petitioner's divisions other than textile, and that when this is done, the resulting constructive average base period net income of petitioner's entire business is less than its average base period net income computed under section 713 (f), *supra*, which would afford petitioner no relief under section 722, all of which is shown, as follows:

| Base period | Year ended October 31 | | | |
| --- | --- | --- | --- | --- |
| | 1941 | 1942 | 1944 | 1946 |
| (1)_____ | $577,234 | $722,444 | $722,486 | $722,486 |
| (2)_____ | 100,316 | 179,136 | 179,136 | 179,136 |
| (3)_____ | $677,550 | $901,580 | $901,622 | $901,622 |
| (4)_____ | 827,498 | 995,033 | 994,991 | 994,991 |

[1] Actual arithmetic average base period net income of all divisions, except textile.
[2] Stipulated constructive average base period net income of new textile division.
[3] Tentative constructive average base period net income of entire business.
[4] Actual average base period net income of entire business computed under section 713 (f) without the benefit of section 722.

Petitioner has never applied for section 722 relief on account of its old business.

The only question in this case is one of law, and the principles involved therein are the same as were litigated and decided in favor of the Government in *Stimson Mill Co.*, 7 T. C. 1065, affd. (C. A. 9) 163 F. 2d 269, rehearing denied August 25, 1947, certiorari denied 332 U. S. 824, rehearing denied 332 U. S. 839; *Homer Laughlin China Co.*, 7 T. C. 1325; *Dowd-Feder, Inc.*, 10 T. C. 345, affd. (C. A. 6) 173 F. 2d 673; and *Acme Breweries*, 15 T. C. 682. Petitioner is not unmindful of these decisions but contends that the facts in the instant case are entirely different from the facts in the decided cases. The distinction which petitioner makes is that the qualifying factor in the decided cases such as a strike in one of the base period years, as was the case in *Stimson Mill* and *Dowd-Feder*, or the excessive depreciation rate present in *Homer Laughlin* had absolutely nothing to do with

the earning of profits during the excess profits tax taxable years, whereas in the instant case the qualifying factor of opening up the new textile division during the base period years caused petitioner to earn in excess of $1,200,000 from this division alone during the excess profits tax taxable years. We do not think that this distinction would make inapplicable the legal principles decided in the above cases.

The basic reason behind the above decisions is found in the specific language of section 722 (a)[5] of the 1939 Code, as amended, wherein it plainly states that "the tax shall be determined by using such constructive average base period net income *in lieu of the average base period net income* otherwise determined under this subchapter." (Italics supplied.) The subchapter referred to is subchapter E of chapter 2 of subtitle A of the Internal Revenue Code and includes section 713. The decisions were not concerned with whether the qualifying factor caused the taxpayer to have large earnings during the excess profits tax taxable years. In fact, section 722 specifically provides that in determining the constructive average base period net income "no regard shall be had" to post-1939 events or conditions.

We have set out the computations relied upon by the parties in support of their respective contentions for a constructive average base period net income based upon the stipulated facts. For the purposes of this discussion we need only refer as an example to the taxable year ended October 31, 1942, as the principles involved in the other years are the same. For the year 1942, petitioner contends it is entitled to a constructive average base period net income of $1,168,337 whereas respondent contends that the constructive average base period net income for that year is only $901,580 and, since this is less than the actual average base period net income of $995,033 computed under section 713 (f), without the benefit of section 722, petitioner is not entitled to any relief under section 722. We agree with the respondent.

There are two objections to petitioner's computation. Petitioner has assumed that when the parties stipulated that "the constructive average base period net income under the provisions of section 722 of the Internal Revenue Code of 1939 for petitioner's Textile Division

[5] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayer generally occurring or existing after December 31, 1939, except * * *

is in the amount of $179,136.00," this amount should be added to the actual excess profits net income of the old divisions for each year on a year-by-year basis in making its computation under section 713 (f). But this is not what was stipulated. Only the average for the base period was agreed upon. The constructive income for each of the base period years of the new division could well vary from year to year the same as the income from the old divisions varied from year to year or as the income of general business varied from year to year and the section 713 (f) computation would vary accordingly. The second objection is more serious in that petitioner's method of computation begs the very legal question at issue, namely, the right to use the formula provided in section 713 (f) in the establishment of a constructive average base period net income under section 722 in any event. The cases of *Homer Laughlin* and *Acme Breweries, supra,* hold that this cannot be done. While the other two cases cited above involve the application of section 713 (e), the principle decided is the same in all the cases. *Acme Breweries,* however, is on all fours with the instant case. As in the case of petitioner herein, Acme was a multiple product corporation. Acme had been in the beer business for a number of years and began the manufacture of yeast products for which the parties stipulated a constructive average base period net income under section 722 (b) (4), and the cause went on to trial on the beer business, with Acme alleging that its beer business was depressed during the base period because of a section 722 (b) (2) factor and further that it began to bottle its beer during the base period which resulted in increased sales and earnings, and therefore Acme urged a 722 (b) (4) factor on that account. Earnings during the last half of the base period exceeded earnings during the first half. The Court denied relief for the beer business under both sections of the Code and ordered the decision to be entered under Rule 50. See *Acme Breweries,* 14 T. C. 1034.

A supplemental opinion was rendered since the parties could not agree under Rule 50. See *Acme Breweries,* 15 T. C. 682. The Commissioner simply added the actual arithmetic average during the base period for the beer business to the reconstructed amounts stipulated for the yeast business and since this total was less than the average under section 713 (f), section 722 relief was denied.

The arguments made by Acme in the proceedings under Rule 50 were substantially the same as petitioner is making here. In holding contrary to such arguments, we said:

Despite counsel's astute argument to the contrary, we think petitioner's proposed computation would afford a combined relief under both section 722 and section 713. Fundamentally, it seeks to take advantage of section 722 for its yeast business and 713 (f) for its beer business to arrive at a reconstructed income for its entire business. This it cannot do for there is a statutory pro-

hibition against using both sections which are mutually exclusive. *Stimson Mill Co.*, 7 T. C. 1065, affd., 163 Fed. (2d) 269, certiorari denied, 332 U. S. 824; *Dowd-Feder, Inc.*, 10 T. C. 345, affd., 173 Fed. (2d) 673; *Homer Laughlin China Co.*, 7 T. C. 1325.

In the instant case petitioner made no claims for section 722 relief on account of its old business. There was no showing of any abnormal variations or growth in connection with the old business. It was therefore proper for the respondent to consider the actual excess profits net income of the old business as representing "normal earnings" from that portion of petitioner's business and to add to the base period arithmetic average thereof the constructive average of the new division in determining the constructive average base period net income of the entire business.

Petitioner also makes the point that section 722 (b) (3) of the 1939 Code as amended by section 6 of the Excess Profits Tax Amendments of 1941 provided that the average base period net income then to be determined under section 722 should be computed as in section 713, and that this provision was not repealed by section 722, as amended by section 222 of the Revenue Act of 1942. There is no merit in this contention. Section 222 (e) of the 1942 Act specifically provides that "The amendments made by this section to section 722 shall be applicable with respect to taxable years beginning after December 31, 1939." Therefore, section 722 (a), as previously quoted in footnote 5, was in effect for all the excess profits tax taxable years and provides that the "constructive" average shall be used "in lieu of the average base period net income otherwise determined under this subchapter."

We hold that petitioner is not entitled to any relief under section 722 of the 1939 Code, as amended.

Reviewed by the Special Division.

*Decisions will be entered for the respondent.*