OPINION. Habron, Judge: In this case petitioner’s excess profits tax liability for the taxable years was determined by using an average base period net income of $38,924.48. This amount was computed under section 713(f)(6) and (7), which is the so-called growth formula. This statutory formula increased the excess profits credit petitioner would have otherwise had since its average base period net income, as adjusted by respondent, was $30,394.17. In its applications for relief and in its petition, the petitioner claimed that it was entitled to $158,989.72 as a fair and just amount representing normal earnings during the base period. The grounds asserted were that petitioner had changed the character of its business during the base period by entering into the manufacture and sale of new bags. At the hearing, petitioner admitted that it could not justify the $158,989.72 claim, and on brief, reduced its claim to $94,629.94. The statutory provisions which apply are found in section 722 (b) (4*). The particular language therein upon which petitioner relies is that “the taxpayer * * * during the base period, * * * changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business.” The term “change in the character of the business” is defined as including, inter alia, “a difference in the products or services furnished,” and “a difference in the capacity for production or operation.” It is apparent from the facts, and respondent admits, that petitioner changed the character of its used bag business during the base period years. Respondent insists, however, that this is not enough. He contends that petitioner must also establish a fair and just amount to be used as a constructive average base period net income, and that such amount exceeds the average base period net income computed under the provisions of section 713(f). Pittsburgh Weirton Bus Co., 21 T. C. 888 (1954), reversed on another point 219 F. 2d 259 (C. A. 4, 1955); Green Spring Dairy, Inc., 18 T. C. 217 (1952), affirmed on another point 208 F. 2d 471 (C. A. 4, 1953); Powell-Hackney Grocery Co., 17 T. C. 1489 (1952); Sartor Jewelry Co., 22 T. C. 773 (1954); Schwarz Paper Co., 23 T. C. 605 (1955); Wentworth Military, Scientific, Etc. Co., 22 T. C. 721 (1954); Acme Breweries, 14 T. C. 1034 (1950); Lamar Creamery Co., 8 T. C. 928 (1947). Since a qualifying factor has been established, we will examine next petitioner’s contention that $94,629.94 is a fair and just amount to be used as a constructive average base period net income. In arriving at such amount, petitioner applied its version of the push-back rule upon the theory that, had it started the new bag business 2 years before it did, its net operating income would have increased during each of the base period years. After reconstructing its excess profits net income for each base period year, petitioner then applied section 713(f)(6) and (7), in order to secure the benefits of the growth formula in addition to the special relief claimed under section 722. It is now well established that a taxpayer cannot secure relief under both section 713 and section 722. Homer LaughMn China Co., 7 T. C. 1325 (1946); Stinson Mill Co., 7 T. C. 1065 (1946), affd. 163 F. 2d. 269 (C. A. 9, 1947) certiorari denied 332 U. S. 824 (1947), rehearing denied 332 U. S. 839 (1947); Dayton Rubber Co., 26 T. C. 389 (1956). The claimed constructive average base period net income of $94,629.94 is erroneous, therefore, to the extent of any portion thereof added under section 713 (f). Petitioner’s reconstructed excess profits net income for the fiscal years ending September 30, without the benefit of the growth formula, was as follows: 1937 — $40,354.98; 1938 — $57,598.03; 1939 — $64,103.20; 1940 — $110,030. An average of the reconstructed net income for petitioner’s base period years is $68,021.55, so that the difference between this average and the amount claimed of $94,629.94 is attributable to petitioner’s application of the growth formula and must be excluded under the Stinson and LaughMn cases, supra. In view of the fact that petitioner’s reconstructed average base period net income of $68,021.55 exceeds the $38,924.48 average computed under the growth formula, we will analyze petitioner’s reconstruction further in order to determine whether $68,021.55 is a fair and just amount within the meaning of the statute. The various steps in petitioner’s reconstruction for the base period years may be briefly stated as follows: Unit prices of new and used bags were determined by dividing dollar sales by unit sales; the percentages of cost of sales, salaries and wages, other expenses, and operating net income to net sales for each year were computed from petitioner’s base period experience; unit sales of new and used bags were then reconstructed; next, unit prices were applied to reconstructed unit sales to arrive at total dollar sales for each base period year; dollar sales were then reduced by the use of the aforementioned percentages to determine cost of sales, salaries and wages, and other expenses, and to arrive at operating net income, which was then averaged. It was in connection with its reconstruction of new and used bag sales for the base period years that petitioner invoked its version of the push-back rule. This consisted of pushing back fiscal 1939 and 1940 sales to fiscal 1937 and 1938, respectively, and then reconstructing fiscal 1939 and 1940 sales. Ignoring the several assumptions made by petitioner, which respondent contends are erroneous, the reconstructed sales claimed by petitioner are as follows: Fiscal year New hags Used tags 1987_ 1, 062,000 7,131, 000 1938_ 2,138,000 6,475,000 1939_ 3,678, 856 6,, 308,000 1940_ 6,330,207 6,308,000 Petitioner’s reconstruction assumes that there was a demand for, and that it could have sold in the competitive market in which it operated, the annual increase in new bags shown by its reconstructed sales. But there is no satisfactory proof in the record to support the assumption. The evidence shows that petitioner’s productive capacity in each year of the base period was greater than the volume of bags it was able to sell; its sales were never circumscribed by its actual ability to produce. This was admitted by petitioner’s principal witness. The new bag business was highly competitive. The record as a whole does not justify the conclusion that lack of capacity to produce restricted petitioner’s sales. The evidence establishes that, rather, petitioner’s earnings up until the latter part of 1938 were limited by its ability to sell its products and not by its ability to manufacture. Petitioner had 2½ years experience in manufacturing and selling new bags before the beginning of its last base period year. Its record of monthly sales reached a more or less stable level in the latter part of 1938 which continued throughout 1939. The beginning of petitioner’s last base period year was the time of the beginning of the war abroad and the evidence shows that thereafter the demand for all types of bags, and the prices, increased. Petitioner’s principal witness has stated that from 1939 on sales could be made of all of the bags which could be supplied. The record does not justify reconstruction of petitioner’s sales on the basis of its productive capacity since its capacity to produce was not a limiting factor of sales. Green Spring Dairy, Inc., supra; Farmers Creamery Co. of Fredericksburg, Va., 18 T. C. 241; Robinson Terminal Warehouse Corporation, 19 T. C. 1185; National Grinding Wheel Co., 8 T. C. 1278. Petitioner’s reconstruction cannot be approved because it contains many erroneous assumptions and unexplained discrepancies which destroy its probity. For example, one of petitioner’s unexplained discrepancies is its statement that 1937 sales of 139,000 new bags represented “the production for 3 months” during the fiscal year 1937. We are unable to find any proof in the record to support this statement, or justify its use by petitioner in. annualizing its 1987 “fiscal year production” as 556,000 new bags. Actually, petitioner sold 139,099 new bags during the 8-month period May to December 31, 1937, and there is no basis in this record for assuming that such sales represented 3 months’ production, 5 months’ production (i. e., to the end of the fiscal year), or a full 8 months’ production. Furthermore, petitioner’s reconstruction makes use of post-December 31, 1939, events, which is strictly prohibited by statute, and which was recognized by petitioner in its offers of exhibits containing data relating to 1940 and later. The entire record has been carefully considered but we must conclude that petitioner’s reconstruction is unacceptable, and that no fair and just amount has been established which can be used as a constructive average base period net income. Nor can we, after a careful analysis of the facts, arrive at a fair and just amount which would exceed the $38,924.48 determined by respondent. We see no merit in petitioner’s contention that respondent has attempted to inject a standard issue by contending that petitioner’s actual base period net income cannot be determined. This defense was raised because of the arbitrary manner in which the parties settled the adjustments which were made to petitioner’s base period income. The burden of showing that it was entitled to a larger excess profits credit than respondent allowed was on the petitioner. This it has failed to dp, and respondent’s determination of petitioner’s excess profits tax liability for the taxable years is approved. Eeviewed by the Special-Division. Decision will be entered for the respondent.