UNITED STATES RUBBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49933. Filed March 31, 1958.

*Montgomery B. Angell, Esq.,* for the petitioner.
*Arthur N. Mindling, Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner denied in whole the petitioner's applications for relief under section 722 for the years 1941 through 1945. The parties have submitted the case upon stipulations of fact which are hereby adopted as the findings of fact.

The Commissioner concedes that the petitioner changed the character of its business during the base period within the meaning of section 722 (b) (4). He recognizes two changes, one "the difference in the ratio of nonborrowed capital to total capital" and the other, "the acquisition before January 1, 1940, of all * * * of the assets of a competitor, with the result that the competition of such competitor was eliminated."

The petitioner, herein called U. S. Rubber, filed its returns and kept its books on a calendar year accrual basis. The petitioner had a number of subsidiaries during the base period years. Certain of them were liquidated during the base period or during the excess profits tax period, and their assets were acquired by the petitioner. Those subsidiaries qualified as component companies under section 740 of the 1939 Code, and the petitioner availed itself of supplement A (sections 740–744) of part II of subchapter E of chapter 2 of the Code for the purpose of computing the average base period net income of the petitioner during the base period years.

U. S. Rubber was engaged at all times material hereto in the manufacture of rubber products and related articles. Its most important products in terms of sales and profits were tires and tubes of which

it produced 14,393,000, or approximately 24.9 per cent of the industry total, in 1939.

The petitioner acquired, at the close of business on Saturday, December 30, 1939, all of the operating assets and properties of the Fisk Rubber Corporation (hereafter called Fisk), including the stock of the several Fisk subsidiaries. All of those Fisk subsidiaries were liquidated during the excess profits tax period and became component corporations of the petitioner within the meaning of the above-mentioned supplement A of part II of subchapter E of chapter 2 of the 1939 Code. The consideration paid by the petitioner to Fisk for such assets was 109,981 shares of United States Rubber common stock and $5,399,241 in cash. All competition with Fisk was eliminated as a result of such acquisition.

U. S. Rubber operates on what it regards as sound capacity or about 95 per cent of theoretical or peak capacity. It operated on that basis during 1939 and produced 14,393,000 automotive tire casings. Its closing inventory of finished casings at the end of the year exceeded its similar inventory at the beginning of the year 1939 by approximately 279,000 casings. The actual production of the tire casings in plants of U. S. Rubber at the end of 1939 "was not sufficient to meet the then existing or anticipated future demands for its products." Its officers began an intensive investigation of various ways of increasing this capacity which included the possible renovation of an idle tire casing plant. Fisk owned a modern and efficient plant in Massachusetts which was producing up to about 60 per cent of its capacity. The controlling motive of U. S. Rubber in acquiring Fisk was to obtain not only Fisk's existing production but the potential increase in production afforded by the unused Fisk capacity, without increasing the capacity of the industry which as a whole had considerably more capacity than was being used. The 40 per cent unused capacity of the Fisk plant represented approximately an additional 1,000,000 casings, less than 2 per cent of the casings produced by the entire industry in 1939 and an increase of about 7 per cent in U. S. Rubber's own capacity for 1939. Officials of U. S. Rubber in charge of scheduling production believed that U. S. Rubber would be able to sell its own existing production and the entire Fisk capacity.

Section 722 (b) provides that:

The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because * * *

of a change in the character of the business such as occurred in the case of this petitioner. Section 722 (a) provides in any case

in which the taxpayer establishes that the tax computed under subchapter E of chapter 2, I. R. C. 1939 (without the benefit of section 722), "results in an excessive and discriminatory tax" and

establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

There are two questions here. One is whether the petitioner has shown that its average base period net income, without the benefit of section 722, is an inadequate standard of its normal earnings because of the admitted change in the character of its business, represented by the acquisition of the Fisk assets and a difference in the ratio of nonborrowed capital to total capital. The other is whether it has established what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income "in lieu of the average base period net income otherwise determined under this subchapter" in computing the excess profits credit based on income.

Several ways are provided in subchapter 2E for computing average base period net income for the purpose of the excess profits credit based upon income, and the taxpayer is allowed to use the most favorable method. "The average base period net income [of the petitioner] otherwise determined under this subchapter" is computed under section 742 (h), since the amount thus computed is larger than the average excess profits net income of the base period and results in a larger credit than any other to which the petitioner would be entitled without the application of section 722. The credit is computed under section 742 (h) by taking the total of the excess profits net income of the petitioner and its component corporations for the base period years 1938 and 1939, subtracting therefrom the total excess profits net income of the petitioner and its component corporations for the base period years 1936 and 1937, adding one-half of the difference to the total for the years 1938 and 1939, dividing that total by 24, and multiplying the dividend by 12. This method, like that in section 713 (f), is referred to as the growth formula. The amount thus arrived at in this case for the taxable years exceeds the mathematical average of the excess profits net income of U. S. Rubber for the 4 base period years by from $1,631,484 to $1,835,219. The petitioner contends that it should retain its average base period net income thus computed under section 742 (h) for each of the taxable years and the only adjustment by reason of section 722 should be to add

$924,736.50, the total of the average base period net income of the Fisk Company ($618,016), and the capital ratio figure.

However, the method provided in section 722 may not be combined with the method allowed by section 742 (h) but is a separate method and the constructive average base period net income determined under section 722 (a) is a unique amount, separately computed, to be used "in lieu of" the average base period net income otherwise determined under subchapter 2E in computing the excess profits credit. See *Stimson Mill Co.*, 7 T. C. 1065, affd. 163 F. 2d 269, certiorari denied 332 U. S. 824, rehearing denied 332 U. S. 839; *Homer Laughlin China Co.*, 7 T. C. 1325, 1333; *Dowd-Feder, Inc.*, 10 T. C. 345, affd. 173 F. 2d 673; *Acme Breweries*, 15 T. C. 682, 683; *Dayton Rubber Co.*, 26 T. C. 389, 393–4, affd. 249 F. 2d 2; *Central Bag Co.*, 27 T. C. 230; *Clayton Coal Co.*, 27 T. C. 810. The constructive average base period net income under section 722 (a) in a case like this is the result of a special *de novo* computation which takes into account the actual earning experience of the taxpayer and the changes in the character of its business coming within section 722 (b) (4) to arrive at "a fair and just amount representing normal [base period] earnings" for comparison with "earnings during an excess profits tax period." It is beneficial in the case of this taxpayer only if it results in a larger amount than that "otherwise determined" under section 742 (h). The taxpayer would avoid this uncertainty by adding the constructive amount on to the section 742 (h) figure.

The present taxpayer, contrary to the direction of section 722 (a), seeks to retain the benefits obtained for itself under section 742 (h) and add on $924,736.50 as an adjustment under section 722, being the Fisk average base period net income plus the average for the difference in ratio of nonborrowed capital to total capital. It states its contentions as follows:

When there is no doubling up in the figures underlying the growth formula and the figures used in the reconstruction under Section 722, a taxpayer is entitled to a determination of its normal earnings, first, by a computation under the growth formula, and second, by an addition through an appropriate reconstruction under Section 722, certainly when such a reconstruction is stipulated, as it is here.

It attempts to distinguish the cited cases on the ground that some of the same earnings would have been used in both computations in those cases, whereas here the section 742 (h) computation is based solely upon U. S. Rubber base period earnings and the additional amount to be added as a section 722 adjustment in no way involves use of those figures but consists of the wholly separate base period earnings of competitor Fisk and the capital ratio figures also separate from the figures used in the section 742 (h) computation. The

stated facts are true, but the difference in facts is not a valid distinction between this case and the cited cases, since the principle stated in those cases also applies here, i. e., the constructive average base period net income provided by section 722 is "in lieu of" the average base period net income otherwise determined under subchapter 2E, is computed without regard to the growth formula provisions, and is not something added on to a growth formula computation of average base period net income. The petitioner claims that statements in *Studio Theatre, Inc.*, 18 T. C. 548; *Southern California Edison Co.*, 19 T. C. 935; and *Rocky Mountain Pipe Line Co.*, 26 T. C. 1087, support its contention that section 722 relief can be added on to average base period net income computed under the growth formula. No such meaning was intended by those comments, which merely stated that the fair and just amount to represent constructive average base period net income under section 722 exceeded the average base period net income otherwise determined under subchapter 2E (in some instances by the growth formula) by a stated amount in each case.

The only argument that the taxpayer makes in this case is that the Fisk and capital ratio figures should be added to the section 742 (h) figure. A taxpayer, which experienced a change in the character of the business, frequently assumes that the change occurred 2 years earlier, as section 722 (b) (4) permits, suggests how, by additional sales resulting from the change, reduced by appropriate costs and expenses, the earning level would have increased by the end of the base period, how that level should be backcast over the prior part of the base period, and how constructive average base period net income should be computed from such theoretical earning figures. But U. S. Rubber never mentions any part of the above method. It does not suggest or discuss how a fair and just amount could be constructed under section 722 in some other way without reliance upon section 742 (h), and the facts as stipulated do not supply a basis for a *de novo* construction under section 722.

The growth formula figures do not take into account the Fisk base period earning (or the capital ratio figures) and it might seem strange that the changes in the character of the business have no effect on the "normal earning" credit. The explanation is that the importance of those changes in the character of the business of U. S. Rubber is overshadowed by the extent to which the actual base period earnings of U. S. Rubber alone are magnified by the growth formula. Sec. 742 (h). The figures vary for the different tax years. Those for 1943, 1944, and 1945, including the adjustments for Fisk and capital ratio, all stipulated, are as follows:

| | 1936 | 1937 | 1938 | 1939 | Arithmetic average |
|---|---|---|---|---|---|
| 1. Actual excess profits net income of U. S. Rubber and its components | $15,473,601.99 | $9,787,412.95 | $15,364,076.73 | $13,567,377.35 | $13,548,117.26 |
| 2. Fisk adjustment figures | 378,236.10 | 340,391.17 | 830,066.55 | 923,373.19 | 618,016.75 |
| 3. Capital ratio adjustment figures | 570,729.00 | 390,000.00 | 246,450.00 | 19,700.00 | 306,719.75 |
| 4. Construction on basis of U. S. Rubber Co. actual earnings, Fisk earnings, and adjustment for difference in ratio of nonborrowed capital to total capital | 16,422,567.09 | 10,517,804.12 | 16,440,593.28 | 14,510,450.54 | 14,472,853.76 |
| 5. Sec. 742 (h) figure based on line 1 above (½ excess of 1938 and 1939 income over 1936 and 1937 income added to 1938 and 1939 total and divided by 2) | | | | | 15,383,336.90 |

Obviously, U. S. Rubber benefited tremendously from the growth formula and the benefit almost doubles the combined effect of the Fisk and capital ratio figures. A rather strong implication that the taxes of this petitioner computed under subchapter E of chapter 2 (without the benefit of section 722) are not excessive and discriminatory and that any proper "constructive average base period net income" under section 722 would be much less than the amounts to which the petitioner is entitled under section 742 (h), arises from the stipulated facts. No combination of Fisk and capital ratio figures with any reasonable figures for U. S. Rubber base period earnings shown in this record could even equal the section 742 (h) figures. The petitioner is clearly entitled to use the section 742 (h) figure under the law, but in reconstructing under section 722 one would have to recognize certain underlying stipulated facts to which the Commissioner calls attention. The actual excess profits net income figures include the following:

| Year | Foreign dividends received | Profit on foreign exchange |
|---|---|---|
| 1936 | $192,339 | $52,906.89 |
| 1937 | 192,339 | 64,302.25 |
| 1938 | 6,616,595 | 1,026,218.16 |
| 1939 | 969,522 | 414.28 |

The beneficial effect of the presence of the above disproportionately large amounts in the 1938 and 1939 base period excess profits net income for the purpose of the growth formula is obvious. Without them the growth formula would not have increased the actual earnings. They tend to show that U. S. Rubber manufacturing operations were not actually growing during the base period but were

declining in 1937 and 1938 and did not recover in 1939 to the 1936 level. This is but an example of why the record as a whole does not justify a "constructive average base period net income" figure under section 722 which would exceed the section 742 (h) amount of average base period net income and why the taxes computed without the benefit of section 722 are not excessive and discriminatory.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*