ATLAS FOUNDRY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47758. Filed December 31, 1958.

*Sol Goodman, Esq.*, for the petitioner.
*Donald W. Geerhart, Esq.*, for the respondent.

---

626

## OPINION.

VAN FOSSAN, *Judge:* Petitioner brings claims for relief under section 722 (b) (1), (b) (4), and (b) (5) of the Internal Revenue Code of 1939, as amended.[2]

We find it unnecessary in this case to decide whether or not there are present qualifying factors under section 722 (b) (1), (4), or (5), and the petitioner does not claim relief under section 722 (b) (2).

---

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer,

\*  \*  \*  \*  \*  \*  \*

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. \* \* \*

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.

No decision on these points need be made because petitioner has not established a constructive average base period net income which would entitle it to relief greater than that already available to it. Thus, although petitioner had shown that it qualifies under section 722, we would nonetheless be unable to grant relief. The establishment of eligibility for relief is only one factor which must be considered. *Powell-Hackney Grocery Co.*, 17 T. C. 1484 (1952). Section 722 (a) requires the petitioner also to establish a fair and just amount representing normal earnings to be used as a constructive base period net income for the purpose of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period. Moreover, since the comparison is made through the use or application of the excess profits credit computed on the basis of the constructive average base period net income, the petitioner must prove or establish a constructive average base period net income sufficient to produce an excess profits credit greater than that already computed without the benefit of section 722. *R. W. Eldridge Co.*, 19 T. C. 792 (1953). This, petitioner has failed to do.

Following the 1937 strike, petitioner intensified its selling activities and substantially increased its sales to customers other than Olds and Schwitzer-Cummins.

For the purpose of constructing an average base period net income, petitioner computed the percentage of increase in sales to customers other than Olds and Schwitzer-Cummins for each of the years 1936, 1937, 1938, and 1939. Sales to Olds and Schwitzer-Cummins were then reconstructed for each of the base period years by increasing sales to these two customers proportionately to the increase in sales to other customers. Actual sales to other customers and constructed sales to Olds and Schwitzer-Cummins were added together to arrive at total constructed sales. Constructed profits for each of the years were computed by multiplying constructed sales by a profit ratio of 11.62 per cent. The growth formula provided in section 713 (f) was applied and a total constructed average base period net income of $100,619.22 determined.

There are several fundamental errors in this reconstruction, and it is entirely out of line with the facts set forth in our findings. Petitioner may not, on one hand, rely on the loss of business from Olds and Schwitzer-Cummins as a basis for relief under section 722 and, on the other, reconstruct earnings to include (1) profits from sales to Olds and Schwitzer-Cummins, as if sales to these two customers had never declined, and (2) increased sales to other customers resulting at least in part from an effort to replace the lost Olds and Schwitzer-Cummins business. Cf. *Southern California Edison Co.*, 19 T. C. 935 (1953). Furthermore, there is no evidence that, all factors being normal, petitioner's sales to Olds and

Schwitzer-Cummins would have increased at the same rate as sales to other customers.

The profit ratio of 11.62 per cent used by petitioner in its reconstruction was computed from sales and profits for the years 1913 through 1929. This period includes the abnormally high profits of World War I and excludes the loss years 1930 through 1938. In the period 1922 through 1939 petitioner realized profits in only 5 years— 1922, 1927, 1928, 1929, and 1939. All others were loss years. Its average loss during this time was in excess of $5,000; its average loss during the base period was $2,865; and its average loss in the 6 years preceding the base period was more than $18,000. In view of such a persistent loss history, it is impossible to justify a profit ratio of 11.62 per cent, or a constructive average base period net income of $100,619.22. Although any computation under section 722 must be based on assumptions, such assumptions must comport with reason when associated with known facts. *D. L. Auld Co.*, 17 T. C. 1199 (1952).

After reconstructing earnings under section 722, petitioner applied the growth formula provided in section 713 (f). It is well established that a taxpayer cannot secure relief under both section 713 and section 722. *Central Bag Co.*, 27 T. C. 230 (1956), citing *Homer Laughlin China Co.*, 7 T. C. 1325 (1946), and *Stimson Mill Co.*, 7 T. C. 1065 (1946), affd. 163 F. 2d 269 (C. A. 9, 1947), certiorari denied 332 U. S. 824 (1947), rehearing denied 332 U. S. 839 (1947).

Petitioner received credits against excess profits taxes computed under the invested capital method of $14,222.22 for 1941 and $14,322.22 for 1942 and 1943. Considering the record as a whole, and particularly petitioner's persistent history of losses, it is impossible for us to arrive at a constructive average base period net income which would yield a credit greater than that already available to petitioner without the application of section 722. This would be true, even were we to conclude that petitioner qualified under section 722 (b) (4) and that the push-back rule applies. We must, therefore, sustain respondent's disallowance of petitioner's claims.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*